# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-02078-SCT

*BOB HANEY*

**v.**

*PAT HANEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/1999 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY E. ERVIN |
| ATTORNEYS FOR APPELLEE: | ROBERT M. CARTER |
| | THAD J. MUELLER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND RENDERED IN PART - 07/21/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2002-CT-00244-SCT

*BOB HANEY*

**v.**

*PAT (ROBERTSON) HANEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2001 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY E. ERVIN |
| ATTORNEYS FOR APPELLEE: | ROBERT M. CARTER |
| | THAD J. MUELLER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |

DISPOSITION:          AFFIRMED IN PART AND REVERSED AND
RENDERED IN PART - 07/21/2005

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, JUSTICE FOR THE COURT.**

¶1.    Bob Haney and his wife, Pat, decided to extricate themselves from a marriage which ended in separation after all of seventeen months.[1] During their brief flirtation with matrimony, they spent time in each other's separate homes, but never actually lived together, and no children were born of the marriage. Even though the complaint for divorce was filed eight years ago, and their divorce was granted five and a half years ago, Bob and Pat have been unable to leave the hospitality of our judiciary.

¶2.    The chancellor's division of marital assets was reversed and remanded by the Court of Appeals. *Haney v. Haney,* 788 So. 2d 862 (Miss. Ct. App. 2001) (*Haney I*).On remand, the chancellor entered another judgment and was again reversed and rendered in part and remanded in part by the Court of Appeals. *Haney v. Haney,* 881 So. 2d 862 (Miss. Ct. App. 2003) (*Haney II*). We granted certiorari and hope now to put an end to these proceedings which have been pending over five times longer than the marital relationship prior to their separation.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1]Pat originally filed for divorce on the grounds of habitual cruel and inhuman treatment and irreconcilable differences. At the beginning of the trial, Bob and Pat announced to the trial court that they had agreed to a divorce on the ground of irreconcilable differences "upon the authority of Section 93-5-2 of the Mississippi Code," which permits the chancellor to grant the divorce and decide the issues upon which the parties cannot agree.

¶3. When Bob and Pat decided to get married, they had substantial separate estates. As a result of her divorce from a prior marriage, Pat received a settlement of $150,000, which she had invested in stocks and a printing business called Barber Printing. She had a home in New Albany, and she was employed at Forms and Supplies in Memphis. Bob had an investment account with approximately $400,000, a home in Madison, and a job with Ameron.

¶4. Bob and Pat married on February 11, 1996. Despite their marriage, they continued to live in their separate homes in separate counties, and they kept their finances separate.

¶5. Three months after the wedding, Pat developed an ear infection and quit her job. The infection was related to Rocky Mountain Spotted Fever she had contracted several years prior to the marriage. Pat developed other ailments, including digestive tract problems, fibromyalgia, and migraine headaches. Pat was covered under Bob's medical insurance. She also had COBRA coverage under her former employer's policy.

¶6. Seventeen months after the wedding, Bob and Pat separated and filed for divorce. They both provided Financial Declarations to the court as required by Rule 8.05 of the Uniform Chancery Court Rules, for the purpose of assisting the chancellor in making a temporary award of financial assistance to Pat. Although Pat listed her health insurance premium of $130.00 per month as an expense for Bob to pay, she did not request the chancellor to require Bob to keep her on his health insurance policy.

¶7. The temporary hearing which convened on November 10, 1997, was concluded on December 15, 1997. The chancellor issued an opinion and temporary judgment on January 8, 1998, finding that both parties had substantial estates which they possessed prior to the marriage. He ordered Bob to pay Pat's car payment in the amount of $873.67 per month

3

through April, 1998. He also ordered Bob to pay temporary support of $850 per month, which included the basic expenses listed by Pat on her Financial Declaration. One of those expenses was the $130.00 per month Pat requested for health insurance premiums. During the following two-year period leading up to the final hearing, Pat never requested a modification of the temporary order to require Bob to provide health insurance. At some point, Pat's COBRA coverage expired, leaving her without insurance, resulting in substantial medical expenses to her.

¶8.    At the final hearing on the complaint for divorce on September 29, 1999, the chancellor found Bob's separate investments had grown from $396,964 at the time of the temporary hearing to $618,214 at the time of the final hearing. Although the chancellor recognized the investment account as Bob's separate, non-marital property, he nevertheless opined that the account's growth during the period of the marriage was marital property. Assets classified by the chancellor as marital assets, subject to equitable distribution, totaled $250,246.45. These assets were: (1) a 1996 Volvo valued at $14,250; (2) $5,898.45 in a checking account held in Pat's name; (3) $8,848 in a checking account held in Bob's name only; and (4) the $221,250 growth in Bob's separate investments. Bob and Pat were each awarded one half of the marital assets. After deducting from Pat's share credits for the Volvo and money she kept, the chancellor ordered Bob to pay Pat $104,974.77, which he called "lump sum alimony," plus attorney's fees in the amount of $5,696.39. In making the award, the chancellor applied the *Ferguson* factors, which are to be considered by a chancellor when dividing marital property. The chancellor set the net value of Pat's non-marital assets at $115,930, and Bob's at $482,464, which included the non-growth portion of the investment account.

*Haney I*

¶9.     On appeal, Bob challenged the award of $104,974.77.  In reversing the chancellor, the Court of Appeals stated:

> Bob argues that the trial court erred in classifying the growth in his non-marital investments as a marital asset.  Pat concedes this point but argues that it is inconsequential because the chancellor did not make an equitable distribution of the property.  Rather, Pat asserts, the chancellor made an award of lump sum alimony.  We agree.

*Haney I*, 788 So. 2d at 865.

¶10.    After its determination that the chancellor had not made an equitable distribution of marital property, the Court of Appeals remanded the case for findings of fact and conclusions of law, pursuant to the factors discussed in *Cheatham v. Cheatham*, 537 So. 2d 435 (Miss. 1988), concerning the "lump sum alimony" award.  The chancellor was also instructed to determine Pat's interest in Barber Printing and its effect on her ability to pay attorney's fees. *Haney I*, 788 So. 2d 862.

¶11.    On remand, the chancellor sent a letter to counsel asking for their positions on the remand issues.  Bob's counsel requested an opportunity to present testimony and argument, which was denied.  Subsequently, the chancellor issued a Revised Opinion and Judgment of the Court which awarded Pat $104,974.77, the same amount as previously awarded.  In making the award, the chancellor made certain factual findings as to the *Cheatham* factors, but no analysis was provided.  For instance, *Cheatham* factor number two is "length of the marriage."  The chancellor's entire analysis of this factor consisted of the following: "The parties were married for approximately 17 months."  We are left to wonder whether the chancellor weighed this factor for, or against, the award.  After setting forth the four factors and associating certain

5

factual findings with each, the chancellor concluded by saying, "Therefore, based on the Cheatam (sic) factors set out above, the Court finds that Bob Haney has sufficient income and ability to pay unto Pat (Robertson) Haney, as lump sum alimony, the sum of $104,974.77." We are provided no analysis, justification or basis for the award of lump sum alimony, other than the chancellor's conclusion that Bob "has sufficient income and ability to pay."

¶12.    Additionally, the chancellor found Pat had no interest in Barber Printing, and he again awarded her attorney's fees in the amount of $5,696.39.

### *Haney II*

¶13.    On appeal, the Court of Appeals held that the chancellor erred in refusing Bob's request to present additional testimony and that the chancellor erred when he "failed to illustrate, analyze or explain how each *Cheatham* factor affected his consideration and supported the award of lump sum alimony." *Haney II*, 881 So. 2d at 866. The Court of Appeals further stated: "Encountered with the same problem as before, we must again reverse and remand for an appropriate decision with the necessary analysis." *Id*. Additionally, the court reversed and rendered the award of attorney fees, stating, "It is readily apparent from her non-marital assets and the award of lump sum alimony that Pat Haney had sufficient financial ability to pay her attorney's fees." *Id*. at 867. On certiorari, we now review this case for the first time.

### ANALYSIS

¶14.    In *Haney I*, the Court of Appeals concluded that the chancellor did not actually intend the award to Pat to be an equitable division of marital assets. We have trouble reconciling this conclusion with the record. When announcing the award in his Opinion and Judgment of the Court, the chancellor stated:

6

In cases of this type where the Court is called upon to make an equitable distribution of marital assets, the court must first determine the character of the parties' assets, that is, marital (acquired during the marriage) or non-marital (acquired by one party before the marriage or by inheritance.

¶15.  Following this pronouncement, the chancellor evaluated the marital versus non-marital assets.  He then used the following phrase in beginning a sentence:  "In attempting to resolve an equitable distribution of the marital assets under the guidelines of the *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), . . ."  Thereafter, in applying the *Ferguson* factors, the chancellor stated, "Considering all of the above, and the factors set forth in the *Ferguson* case, supra, the court finds a reasonable distribution of the marital assets would be . . . ."  Then, the chancellor split the marital assets down the middle, resulting in an award to Pat of $104,974.77, and only then did he make any reference to lump sum alimony.  We find the chancellor clearly intended the award to Pat to be an equitable distribution of marital assets.  Additionally, we find that, subsequent to this Court's decision in *Ferguson*, lump sum alimony is nothing more than a tool to assist a chancellor in equitable distribution.

*Lump sum alimony*

¶16.  In 1994, this Court handed down *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), officially adopting the change which had gradually come about over the previous two decades. Writing for the Court in *Ferguson*, Presiding Justice Prather stated:

> This Court has been in a transitory state regarding the division of marital assets. Our prior law adhered to a system of returning property to the spouse in whom title was held (separate property method); however, recent opinions have eroded adherence to that method of division.  This Court has "long recognized that, incident to a divorce, the chancery court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." (citations omitted).  With this opinion,

7

this Court adopts guidelines for application of the equitable distribution method of division of marital assets.

*Id.* at 925. The *Ferguson* Court further stated:

> Also, this Court has allowed lump sum alimony as an adjustment to property division to prevent unfair division. *Reeves v. Reeves*, 410 So.2d 1300, 1303 (Miss.1982); *Clark v. Clark*, 293 So.2d 447, 449 (Miss.1974); *Jenkins v. Jenkins*, 278 So.2d 446, 449 (Miss.1973). The lump sum award has been described as a method of dividing property under the guise of alimony. (citation omitted). *See also,* H. Clark, *Domestic Relations,* §§ 14.8 at 450 (1976). In *Bowe v. Bowe*, 557 So.2d 793, 794 (Miss.1990), this Court acknowledged that a chancellor had the authority and discretion to divide the marital assets by awarding periodic or lump sum alimony, or both, or by dividing the personal property, or awarding the exclusive use and possession of the homestead. *Armstrong v. Armstrong*, 618 So.2d 1278, 1280 (Miss.1993).

*Ferguson*, 639 So. 2d at 926.

¶17.    A review of the cases cited in *Ferguson*, and other cases, leads to the firm conclusion that lump sum alimony is a tool to assist a chancellor in transferring assets to a spouse who has no legal title, but who contributed to the accumulation of property in the marriage. Prior to *Ferguson*, lump sum alimony was often used, as it was essentially the only method available to a chancellor for the transfer of what is now termed "marital property."

¶18.    For instance, in *Jenkins v. Jenkins*, 278 So. 2d 446 (Miss. 1973), the parties were married for twenty-four years. The Court stated:

> At the beginning of the marriage [the parties] had no assets and the husband made a salary of $85 per week. At the time of the divorce the [husband] admitted assets of $800,000. The [wife's] worth was meager by comparison. It seems to us in a case such as this where the wife has contributed to the accumulation of the property of her husband, doing her part as a housewife, it would not be improper that she be allowed a reasonable amount as lump sum alimony on retrial.

*Id*. at 449.

¶19. In *Clark v. Clark*, 293 So. 2d 447 (Miss. 1974), Mrs. Clark "substantially contributed to the accumulation of marital assets." This, according to this Court, justified consideration of lump sum alimony. As authority, the *Clark* Court stated: In *Jenkins*, we held that a lump sum award in conjunction with an award of monthly alimony was proper in a case where "the wife has contributed to the accumulation of the property of her husband. . . ." (278 So. 2d at 449).

¶20. In *Abshire v. Abshire*, 459 So. 2d 802, 804 (Miss. 1984), this Court noted that when the parties were married, they had very few assets, and when they divorced, Mr. Abshire's assets were in the range of $2 million. This Court cited the following language from *Jenkins*: "It seems to us in a case such as this where the wife has contributed to the accumulation of the property of her husband, doing her part as a housewife, it would not be improper that she be allowed a reasonable amount as lump sum alimony." *Id*. at 804-05. In *Abshire*, this Court affirmed an awarded of lump sum alimony to Mrs. Abshire in the amount of $200,000.

¶21. In *Schilling v. Schilling*, 452 So. 2d 834 (Miss. 1984), the Schillings were married when they were both nineteen years old. Mrs. Schilling "aided [Mr. Schilling] in his campaign for chancery clerk and in 1967 quit her job in order to work with him as Deputy Chancery Court Clerk, a position she held for thirteen years. . . . Virtually all of the property acquired by the couple during the twenty-one years of marriage was titled in Mr. Schilling's name.". *Id*. at 835. The Court noted that the chancellor's award of lump sum alimony was based on the fact that "Carolyn Schilling had made a very substantial contribution to the financial position of [Mr. Schilling]." Accordingly, this Court affirmed an award of lump sum alimony.

¶22.    In ***Tutor v. Tutor***, 494 So. 2d 362, 364 (Miss. 1986), the Tutors married when the husband was a high school student and the wife was a school teacher.  Throughout the marriage, the wife worked and provided income for the family and contributed to the financial success of her husband.  This Court cited with approval the holding in ***Jenkins v. Jenkins***, 278 So. 2d 446, 449 (Miss. 1973), that lump sum alimony, in addition to   monthly alimony, is proper "where the wife had contributed to the accumulation of the property of her husband."

¶23.    Since ***Ferguson***, chancellors have exercised their authority to divide the property itself, rather than award lump sum alimony to make up for the value contributed by the spouse not holding legal title.    Thus,  the  necessity  for  lump  sum  alimony  has  greatly  diminished. However, it has not disappeared.

¶24.    In ***Ferguson*** this Court recognized that, in that case, an award of lump sum alimony might be appropriate.   Mr. Ferguson was accused of taking thirty thousand dollars from a savings account and putting it "where nobody could get to it or find it."   Thus, even though Mrs. Ferguson had contributed to the accumulation of the savings account, it could not be divided because it was gone.  This Court stated:

> Just as in ***Tutor v. Tutor****,* 494 So.2d 362 (Miss.1986), [Mrs. Ferguson] worked and contributed to Billy's financial status, but had no assets of her own; her separate estate pales in comparison to Billy's. This award of lump sum alimony may have been made by the chancellor to give Linda financial security. *See also Cheatham v. Cheatham,* 537 So.2d 435, 437-38 (Miss.1988). An explanation of the basis of this award will help this Court determine whether the distribution represents an abuse of discretion or a division supported by the record. Therefore, a remand is warranted on this issue.

***Ferguson***, 639 So. 2d at 936.

*The Cheatham Factors*

¶25.    In *Haney I*, the Court of Appeals rejected the chancellor's evaluation using the *Ferguson* factors and remanded for an evaluation using the *Cheatham* factors.    However, the *Cheatham* factors are really nothing more than an earlier version of the *Ferguson* factors, and both are used for the same purpose.  A side-by-side comparison is helpful.

| No. | *Ferguson* Factors | No. | *Cheatham* Factors |
|---|---|---|---|
| 1 | Substantial contribution to the accumulation of the property. | 1 | Substantial contribution to the accumulation of total wealth of the [paying spouse] either by quitting a job to become a housewife, or by assisting in the paying spouse's business. |
| 2 | The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise. | | |
| 3 | The market value and the emotional value of the assets subject to distribution. | | |
| 4 | The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as [non-marital assets]. | | |
| 5 | Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution. | | |
| 6 | The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties. | | |
| 7 | The needs of the parties for financial security with due regard to the combination of assets income and earning capacity. | 3 | Where recipient spouse has no separate income or the separate estate is meager by comparison. |
| | | 4 | Without the lump sum award the receiving spouse would lack any financial security. |
| 8 | Any other factor which in equity should be considered. | 2 | A long marriage |

¶26.    Clearly, the *Cheatham* factors were simply an earlier attempt by this Court to provide a chancellor with guidelines for awarding what today is called an equitable distribution of

marital assets, under appropriate circumstances. Indeed, we see no *Ferguson* factor which would be inappropriate in evaluating lump sum alimony. Although we continue to refer to certain payments as "lump sum alimony," these payments are really no more than equitable distribution in the form of lump sum cash, rather than an equitable portion of certain property which cannot be divided equitably.

¶27. In determining a spouse's contribution which justifies equitable distribution, we look not only at cash contributions and assistance in the spouse's workplace or business, but also to domestic work in the home such as caring for children, cooking meals, cleaning house, and washing and ironing clothes. "The persistent attempts made to put a monetary value on a homemaker's contributions are likely to undervalue the magnitude of such contributions." *Ferguson*, 639 So. 2d at 926 n.2. The spouse who is accumulating the monetary assets will have more time to accumulate more assets if someone is taking care of all of the domestic responsibilities.

¶28. We find no case, however, which authorizes the award of lump sum alimony or an equitable distribution of non-marital assets based upon nothing more than one spouse's need and the other's ability to pay. More justification is needed. That is why the *Cheatham* factors and the *Ferguson* factors were provided.

¶29. As previously stated, the chancellor found marital assets subject to equitable distribution (and/or lump sum alimony) to be: (1) a 1996 Volvo valued at $14,250; (2) $5,898.45 in a checking account held in Pat's name; (3) $8,848 in a checking account held in Bob's name only; and (4) the $221,250 growth in Bob's separate investments. As far as we can tell from the record, the parties do not contest an equal division of the first three items and,

in that respect, we affirm the chancellor. The fourth item, however, is vigorously contested. We shall now apply the *Ferguson* factors (which will necessarily include all the *Cheatham* factors), to the facts established in the record, to determine whether remand is necessary for a determination of equitable distribution. Lump sum alimony is unnecessary, since the property at issue is money, which is easily divided.

*Substantial contribution to the accumulation of property*

¶30. Other than vague evidence of clerical assistance to Bob for three or four months, no other evidence was offered of any contribution by Pat to Bob's income or accumulation of assets. Bob had the investment account prior to the marriage, and the growth of that account was unrelated to any effort or contribution from Pat. Thus, this factor weighs against equitable distribution.

> *The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.*

¶31. There is no indication that Bob disposed of any marital assets. Although the chancellor emphasized that Bob terminated Pat's insurance coverage, resulting in extensive medical bills to Pat, the record indicates that Pat requested an award of temporary support which included $130.00 per month for health insurance premiums. The chancellor granted Pat's request, and Bob made the payments as ordered. Pat made no request for an order requiring Bob to keep her insured on his group policy. Thus, we are unable to find in the record any basis for holding these medical bills against Bob.

¶32. The record indicates that Pat's reduction in her investments occurred in large measure due to several factors attributed solely to her own actions. Her investment in a printing

13

company was lost. She expended money for hospital expenses and "trouble" related to her son by her previous marriage. She paid for her daughter from a previous marriage to finish school in Oregon. Subsequent to the temporary hearing, she purchased a lot for $10,000, and constructed a new home. She purchased new furniture for her new home. Based on the record, this factor weighs against equitable distribution.

*The market value and the emotional value of the assets subject to distribution.*

¶33. As stated *supra*, the assets subject to equitable distribution will be divided equally. This factor is of no assistance.

*The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as [non-marital assets].*

¶34. The chancellor found Bob's net non-marital assets to be $482.464. However, the chancellor erroneously concluded that the $221,250 growth in Bob's investment account was automatically deemed a marital asset. The entire value of Bob's assets not ordinarily subject to equitable distribution was $703,714. The chancellor found the value of Pat's assets not ordinarily subject to equitable distribution was $115,930. These assets are not normally subject to equitable distribution. In the event the other factors indicate some equitable distribution of these assets is required,[2] this factor would assist the chancellor in determining the amount.

*Tax and other economic consequences, and contractual and legal consequences to third parties, of the proposed distribution.*

¶35. The record does not indicate this factor has relevance in this case.

---

[2]For instance, if Pat had worked in the home for many years while Bob's investment account grew, some equitable distribution of the growth might be necessary.

*The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.*

¶36.    The record does not indicate that this factor has relevance in this case.

*The needs of the parties for financial security with due regard to the combination of assets income and earning capacity.*

¶37.    The chancellor found that Pat had monthly income of $1,801, with expenses of $3,350. According the chancellor's findings, Bob had monthly income of $7,539, but the chancellor failed to list Bob's monthly expenses. Although Pat had a substantial separate estate, her deficit each month of approximately $1,500 would deplete her assets in eight to ten years. Bob faces no similar threat. This factor weighs in favor of equitable distribution.

*Any other factor which in equity should be considered.*

¶38.    This factor can best be discussed by quoting from Judge Griffis's excellent analysis for the Court of Appeals in *Haney II*:

> The evidence in this case . . . clearly established that throughout their marriage Pat and Bob maintained separate residences and separate businesses. Pat did little to contribute to the accumulation of Bob's total wealth. Pat's business decisions caused the drastic reduction in her own wealth and in her income. Bob and Pat maintained separate checking accounts and had separate investments. Their marriage lasted only seventeen months. . . . [T]he only conclusion that the record supports is that Pat and Bob, although married, lived lives that were financially separate and independent of each other or their marriage.

*Haney II,* 881 So. 2d at 867.

¶39.    Stated another way, there is little evidence in the record that Pat and Bob considered their marriage more than a legal formality. This factor weighs against equitable distribution.

¶40. Thus, no further analysis by the chancellor is necessary. The uncontested marital assets have already been divided. No equitable distribution of other assets can be justified from the record before us. We therefore find further analysis by the chancellor is unnecessary.

*Attorney's fees* [3]

¶41. An award of attorney's fees is nothing more than equitable distribution of a different flavor. Such awards are justified where the equities suggest one party should assist the other, and the other party is unable to pay. ***Brooks v. Brooks***, 652 So. 2d 1113, 1120 (Miss. 1995); ***Martin v. Martin***, 566 So. 2d 704, 707 (Miss. 1990); ***Powers v. Powers***, 568 So. 2d 255 (Miss. 1990). We agree with the finding of the Court of Appeals: "The chancellor's award of attorney's fees was an abuse of discretion and was clearly erroneous. Accordingly, we reverse and render the chancellor's award of attorney's fees." ***Haney II***, 881 So. 2d at 867.

## CONCLUSION

¶42. We affirm in part and reverse and render in part the judgment of the Court of Appeals.

¶43. The chancellor's equal distribution to the parties of marital assets, totaling $28,996.45, which included (1) a 1996 Volvo valued at $14,250; (2) $5,898.45 in a checking account held in Pat's name; and (3) $8,848 in a checking account held in Bob's name only, is affirmed. This results in a distribution to each party of $14,498.22.

---

[3]In his appeal of ***Haney I***, Bob did not list the award of attorney's fees in his Statement of Issues. However, he stated on the last page of his brief, without citation of authority, "The award of attorney's fees by the Chancellor was manifest error." Pat accepted and briefed the issue of the award of attorney's fees as though it had been appropriately raised. Bob also failed to list the attorney's fee award as an issue in his appeal of ***Haney II***, but again raised the question in a single sentence at the end of his brief, this time citing (with no analysis) ***Geiger v. Geiger***, 530 So. 2d 185, 187 (Miss. 1988). We find Bob narrowly escaped waiver of the issue.

¶44. The chancellor's award of lump sum alimony and attorney's fees is reversed and rendered.

¶45. **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.**

**EASLEY AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. CORTRIGHT, S.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ AND CARLSON, JJ., NOT PARTICIPATING.**