RANDOLPH, Presiding Justice,
for the Court.
¶ 1. Tammy and Dane Davenport were granted an irreconcilable-differences divorce in 2012. Tammy appeals from the final judgment of divorce. Finding no error, we affirm the final judgment of the Chancery Court of Warren County.
FACTS
¶ 2. Tammy English Davenport and Richard “Dane” Davenport were married in 1996. Three children were born of the marriage. Additionally, Tammy had custody of three children from her previous marriage. Dane worked as a highway patrolman and supported Tammy in her career as a physical therapist, which included opening and operating her own physical therapy practice. Over the years, Tammy endeavored to create and grow multiple corporations. The leading corporation was Good Samaritan Physical Therapy (“GSPT”), which was incorporated in 1997. Tammy held seventy-five percent ownership of GSPT, while Dane held twenty-five percent. The couple also owned their marital home, a lake house, and a condominium.
¶ 3. In September 2007, Tammy claimed that she had discovered Dane molesting one of her sons from her previous marriage. The Youth Court of Warren County found that Dane had molested two of his stepsons, resulting in the boys being adjudicated abused and the remaining four children being adjudicated neglected. Tammy and Dane separated in September 2007. Dane thereafter filed a complaint for divorce on the ground of habitual cruel and inhuman treatment. The proceedings were stayed during the time in which criminal charges were being pursued against Dane. Dane was indicted for sexual battery in both Oktibbeha County and Warren County. Dane was found not guilty in Oktibbeha County on one count of sexual battery. Dane was tried on nine counts of sexual battery in Warren County. The first trial in Warren County resulted in a mistrial. After the second trial, the jury returned a verdict of not guilty on five counts; however, a unanimous verdict could not be reached on the remaining four counts, resulting in a mistrial on the remaining counts. Thereafter, the Attorney General’s office entered an order dismissing with prejudice the four remaining counts.
¶ 4. Once the criminal proceedings concluded, Tammy moved the Warren County Chancery Court to lift its order staying the divorce proceedings and sought leave to amend her answer and to file a counter-complaint. Subsequently, the parties entered into an agreed order withdrawing fault grounds and sought an irreconcilable-differences divorce. Tammy and Dane petitioned the chancery court to determine how certain expenses should be paid regarding insurance, medical expenses, and extra expenses involving the children. Tammy and Dane also requested that the chancery court determine marital assets and equitable distribution, alimony, and child support. As to child custody, the parties agreed to incorporate and adhere to the custody and visitation order previously entered by the youth court.
¶ 5. Dane moved the court to appoint experts to value their assets. Tammy and Dane agreed to Annette Herrin, CPA. She testified as an expert witness, and they split the costs associated with Her-rin’s services. Tammy designated Herrin *234 and Todd Boolos, CPA, as her expert witnesses. Dane also designated C. Rodney Cummins, CPA, to support his position regarding the finances of GSPT. Each testified at trial.
¶ 6. At trial, it was admitted that, during Tammy and Dane’s marriage, the parties received distributions from GSPT each year to cover any expenses which were not covered by their salaries. After the parties separated, Dane no longer received distributions from GSPT. It is undisputed that, after the separation, the only marital property that Dane continued to benefit from was the use of his truck. Based on the testimony of each accountant, it was revealed that Tammy’s regularly received distributions were later reclassified as “loans to shareholder,” after the parties separated in 2007.
¶7. On July 23, 2012, the chancery court entered a final decree of divorce. The chancellor found that GSPT was incorporated after their marriage and both parties worked to start and develop the business. Further, the success of GSPT funded the formation of other businesses and funded the purchase of the marital property. From the testimony provided by each accountant, the chancellor considered the value of the marital assets and accepted the values established by Herrin, with two exceptions. The following reflects the values of each asset as determined by Herrin:
1. Great Dane Properties — $167,000
2. Nehemiah Properties, LLC — $6,300
3. Aquilla Group, LLC — $600
4. Aquilla Development, LLC — $000
5. Rehab Resources Unlimited, Inc.— $188,000
6. Medical Real Estate Management, LLC — $29,000
7. Medical Supplies Unlimited, Inc.— $2,500
8. Good Samaritan Performance Sports, LLC — $14,000
9. Competitive Edge University, LLC — $1,300
10. Good Samaritan Physical Therapy, Inc. — $2,683,000
11. Change of Habit, Inc. — $000
Total Net Business Assets Value for Equity Interests of parties — $3,092,000
The chancellor also accepted the following real and personal property values:
1. Marital dwelling (equity) — $320,000
2. Condominium — $51,923.46
3. Pontoon Boat — $18,000
4. Ski Boat — $25,000
5. Household furnishings — $50,000
6. Lot adjacent to marital dwelling— $62,000
Total — $526,923.46
¶8. The lake house was owned by Great Dane Properties. However, the chancellor determined that the lake house was an asset for personal use and not for business use. The chancellor also found that the value of Great Dane Properties did not include the debt owed on the lake house. Therefore, the chancellor deducted the debt of $18,856.59, assessing the actual value of Great Dane Properties as $146,143.41. The chancellor found that, although Herrin had given Aquilla Development, LLC, a value of zero because the company owed a debt to Tammy, Aquilla Development, LLC,[1] was the owner of real property valued at $249,725 with a mortgage of $185,137.00. The chancellor found that, if the land was sold, Tammy would receive thirty-three percent of the difference in the land’s value and the amount of the mortgage, resulting in an asset value of $21,452.23 as to Aquilla Development.
*235 ¶ 9. Further, the chancellor determined that Dane had received a K-l from GSPT in 2010 reporting income of $107,000, due to his twenty-five percent ownership in the corporation, even though Dane had not received any distributions since the time of separation in 2007. As a result, Dane incurred a tax liability of $41,054.
¶ 10. Lastly, the chancellor found that Dane was entitled to forty percent of the business values, excluding the lake house; fifty percent of the real-property equity not used in businesses, including the lake house; and fifty percent of the value of the personal property. Further, the chancellor determined that lump-sum alimony best suited the needs of the parties to avoid dividing the companies, pursuant to MacDonald v. MacDonald, 698 So.2d 1079 (Miss.1997).
¶ 11. In the final divorce decree, the chancellor equitably divided Tammy’s and Dane’s assets under the factors set forth in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).[2] The chancellor ruled that Dane was entitled to business assets in the amount of $1,179,380.89 and nonbusiness assets in the amount of $336,533.44. Thus, Dane was entitled to $1,515,914.33 in total assets, awarded in the form of lump-sum alimony, payable in monthly installments of $8,421.75 for 180 months. Tammy also was ordered to reimburse Dane for the income taxes resulting from GSPT issuing him a K-l, totaling $41,054. Lastly, the chancellor ordered Dane to pay child support in the amount of $683.66 per month, twenty-two percent of his gross monthly income of $3,107.51.
¶ 12. Aggrieved, Tammy appealed the final divorce decree to this Court, raising the following issues:
I. Whether the trial court manifestly erred in disregarding marital liabilities owed by Tammy, resulting in an over-valued marital estate;
II. Whether the trial court manifestly erred in failing to consider that the expenditures made during the time of separation were legitimate and not wasteful dissipation of assets;
III. Whether the trial court manifestly erred by excluding expert opinion testimony from Certified Public Accountant, Todd Boolos;
IV. Whether the trial court manifestly erred by failing to give proper weight to the findings of sexual *236 child abuse by the Warren County Youth Court;
V. Whether the trial court manifestly erred in excluding from evidence a document authored by the Warren County Youth Court Judge describing facts and circumstances underlying the youth court’s findings of sexual child abuse; and
VI. Whether the trial court manifestly erred in failing to consider and make on-the-record findings as to whether Tammy could reasonably pay the alimony awarded to Dane.
STANDARD OF REVIEW
¶ 13. Chancellors are awarded complete discretion, “as equity demands,” when equitably dividing marital assets. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). A chancellor’s findings will not be overturned unless those findings were “manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” MacDonald v. MacDonald, 698 So.2d 1079, 1083 (Miss.1997) (citing Ferguson, 639 So.2d at 928, 930).
ANALYSIS
I. Whether the trial court manifestly erred in disregarding marital liabilities owed by Tammy, resulting in an over-valued marital estate.
¶ 14. Tammy testified that she had monthly personal expenses totaling $37,000 per month, but her monthly net income was only $8,000. The $29,000 difference was covered by disbursements from GSPT. Tammy provided that this practice had been utilized to benefit her and Dane prior to their separation, and that Tammy continued to use the profits from GSPT for personal use to the present date. Boolos, who had been the accountant for Dane, Tammy, and the businesses for many years, testified that, after the parties separated in 2007, he advised Tammy that any further disbursements from the company should be issued as loans to shareholder rather than distributions, to avoid having to issue pro rata distributions to Dane.
¶ 15. The chancellor found that Tammy had withdrawn $2,960,455, from GSPT since the time of separation in late 2007. Tammy lists this amount on her Uniform Chancery Court Rule 8.05 financial statement as a liability because it was issued from GSPT as a loan to shareholder. At trial, Dane asserted that Tammy had disguised actual distributions through reclassifying the usual disbursements as loans to shareholder. Boolos testified that he prepared promissory notes for all of the shareholder loans. Herrin’s report provided that $2,236,895, was expended on new business ventures, most of which were unsuccessful, leaving $723,560 being used for personal expenses. The chancellor’s ruling considered that fact, finding that Tammy had “made some poor investments.”
¶ 16. Herrin’s report concluded that GSPT had a net asset value of $2,683,000, which included the $2,960,455, due from the shareholder, Tammy. Tammy cites Cuccia v. Cuccia, to support her argument that the chancellor failed to take into consideration Tammy’s debts when valuing and dividing the marital estate. Cuccia v. Cuccia, 90 So.3d 1228, 1233-34 (Miss.2012) (Marital debt should be considered when determining equitable division of property.). Tammy argues that the chancellor failed to consider the $2,960,455 loan due to GSPT, a $105,000 loan due to Tammy’s father, and $80,000 due to the Internal Revenue Service (IRS).
¶ 17. In the final decree, the chancellor relied on this Court’s decision in MacDonald v. MacDonald, 698 So.2d 1079 (Miss.1997). In MacDonald, the chancel *237 lor awarded Diane MacDonald lump-sum alimony for her equitable interest in Kevin McDonald’s business. MacDonald, 698 So.2d at 1086. The chancellor awarded Diane $12,000 per year over a period of ten years, based on the business value at the time of divorce. Id. On appeal, Kevin argued that the chancellor should have used the value of the business at the time of separation, which would have been considerably less. Id. This Court determined that the chancellor may use his or her discretion when choosing whether to use the value at the time of separation or divorce. Id. The chancellor awarded Diane an amount larger than what the business was valued at, and this Court noted that the amount awarded reflected her interest in the business and not the value of the business. Id. The parties agreed to a determination based on the current cash value of the business. Id. Further, their accountant testified that “... the net worth of the store did not represent its fair market value, but rather simply constituted its assets minus its liabilities.” Id.
¶ 18. The factual scenario in MacDonald is very similar to the facts before us. Here, the chancellor chose to consider the value of the businesses at the time of divorce, and therefrom awarded Dane his interest in those businesses. Based on Herrin’s report, the chancellor was able to compare the net asset value of GSPT when the parties separated in 2007, which was $2,520,000, to the net asset value in 2011, which was $2,683,000. Testimony provided that Tammy has yet to make any payments to GSPT regarding her “loan.” Testimony also indicated that Tammy may never repay the loan. Whether Tammy does or does not repay the loan is of little importance. Of importance is the fact that Tammy and Dane agreed to hiring Herrin to produce a report regarding their financial status and valuation of their assets and to provide expert testimony, at trial, regarding her findings. It is undisputed that Herrin was a well-qualified CPA and used standard accounting methods to formulate her opinions. Accordingly, the chancellor did not abuse her discretion in accepting Herrin’s valuation of the businesses and awarding Dane his equitable interests therefrom.
¶ 19. Next, Tammy argues that the chancellor failed to consider that Tammy owes $80,000 in back taxes to the IRS and $105,000 to her father. Tammy’s only support for this argument is that the chancellor did not explicitly mention those debts in the order. However, the final decree ordered that Tammy would receive all business and nonbusiness assets and directed Dane to execute all deeds and paperwork to accomplish the transfers to Tammy. The chancellor further ordered, “Tammy Davenport shall be responsible for all debt associated with said businesses and non-business assets and shall hold Dane Davenport harmless for said debts.” The two debts which Tammy claims were ignored were listed on her Rule 8.05 financial statement. The chancellor clearly considered those debts by ordering Tammy to pay all business and nonbusiness debts, as the order does not specifically list any of the debts. Therefore, this issue is without merit.
II. Whether the trial court manifestly erred in failing to consider that the expenditures made during the time of separation were legitimate and not wasteful dissipation of assets.
¶ 20. Tammy argues that the chancellor found, under Ferguson, that Tammy excluded Dane from all benefits of the business and nonbusiness assets, except for his truck, after the time of the divorce. Further, Tammy asserts that her removal of *238 funds from the business was legitimate and not wasteful. Under the chancellor’s findings of facts, she did find that, “[w]ith the exception of retaining his truck, Dane was excluded by Tammy from all connection with the businesses, the houses and his former lifestyle.” Under factor two of the Ferguson factors, “[t]he degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise,” the chancellor merely listed the amount Tammy had withdrawn from GSPT since the separation. The chancellor also stated that Tammy had made unsuccessful business investments and had changed her accounting practices since the separation.
¶ 21. The chancellor’s decree contains no explicit or implicit finding of wasteful dissipation. Tammy’s assertions otherwise are unsupported. Tammy cites Armstrong v. Armstrong, to support that wasteful dissipation is a factor to be considered when awarding alimony. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). However, because the chancellor was equitably distributing assets under Ferguson via an award of lump-sum alimony, which reflects Dane’s interest in the business, the chancellor was not considering the factors presented in Armstrong. See Haney v. Haney, 907 So.2d 948 (Miss.2005) (discussed infra, Issue VI). The chancellor’s ruling 'as to this issue is affirmed.
III. Whether the trial court manifestly erred by excluding expert opinion testimony from Certified Public Accountant Todd Boolos.
¶ 22. After hearing Tammy’s testimony on the first day of trial, Dane filed a motion to exclude Boolos’s testimony based on the revelation at trial that he had been “actively involved” in aiding Tammy in financial decisions made after the separation, decisions which Dane avers were adverse to his interest. Dane also asserted that he observed Boolos actively participating with Tammy’s counsel during the first day of trial.
¶ 28. Tammy argues that, after hearing arguments from both sides, the chancellor made an on-the-record ruling, prohibiting Boolos from testifying as an expert witness, thus limiting his testimony to that of a fact witness. What Tammy fails to reveal is that, during the hearing, the chancellor specifically asked, “[i]s he going to be testifying as an expert or a fact witness.” Tammy presented to the chancellor that Boolos’s testimony was more factual in nature and proceeded to explain what his testimony would entail. Based on that explanation, the chancellor denied Dane’s motion and allowed Boolos to testify. Boo-los proceeded to provide lengthy and detailed testimony for the chancellor’s consideration.
¶24. Tammy argues that Boolos was prevented from showing “... the value of [Tammy’s] net worth, the true value of the marital estate, financial condition of GSPT, and her ability to pay the excessive alimony awarded to Dane.” Nevertheless, a review of the transcript shows that Boolos touched on those issues in his testimony. Further, Tammy offers no explanation as to what differing testimony Boolos would have provided had he testified as an expert rather than as a fact witness, nor does she offer how his expert testimony would have differed from Herrin’s, whom Tammy agreed to and designated as her expert witness.
¶ 25. Therefore, Tammy failed to present an argument to support that the chancellor erred in ruling that Boolos would testify as a fact witness, because Tammy conceded at the hearing that Boo- *239 los’s testimony was “factual in nature.” Further, Tammy provides nothing to support how Boolos’s testimony would have differed had he testified as an expert witness. Accordingly, this issue is without merit.
IV. Whether the trial court manifestly erred by failing to give proper weight to the findings of sexual child abuse by the Warren County Youth Court.
V. Whether the trial court manifestly erred in excluding from evidence a document authored by the Warren County Youth Court judge describing facts and circumstances underlying the youth court’s findings of sexual child abuse.
¶ 26. Tammy avers that “[mjarital misconduct is a factor for consideration in property division in both fault-based and irreconcilable-differences divorces.” Tammy relies on Driste v. Driste to support her assertion; however, Driste is inapplicable to the facts before us, as Driste considered an award of permanent periodic alimony. Driste v. Driste, 738 So.2d 763, 766 (Miss.Ct.App.1998). Nonetheless, “[i]t is true that the chancellor is entitled to weigh ‘[mjarital misconduct’ as a ‘viable factor’ in his analysis of the Ferguson factors, but ‘only when the misconduct places a burden on the stability and harmony of the marital and family relationship.’ ” Phillips v. Phillips, 45 So.3d 684, 697 (Miss.Ct.App.2010) (quoting Carrow v. Carrow, 642 So.2d 901, 904-905 (Miss.1994) (citing Ferguson, 639 So.2d at 927)).
¶ 27. Tammy contends that proper weight was not given to the ruling by the youth court, because the chancellor did not allow into evidence a brief that was authored by the youth court, containing the judge’s findings regarding the alleged sexual abuse. Dane argued that there was little relevance to the document because he had been found not guilty in circuit court, and the remaining counts were dismissed with prejudice. However, the chancellor allowed the adjudication order to be entered into evidence. The chancellor did not allow the brief entered into evidence, stating, “... I think the [Youth] Court speaks through the order and not the brief.”
¶ 28. Furthermore, in the final decree, the chancellor discussed the situation surrounding the allegations of sexual abuse, recognized both dispositions in youth court and in circuit court, and specified that the events surrounding the accusations marked the point in time when the marital and family relationship were no longer stable and harmonious. The chancellor then concluded as follows:
While the Court considered the fault as alleged by Tammy, the Court notes that the Youth Court found two of the children to be abused and the Circuit Court found the accused not guilty. The Court considers this factor neutral.
Based on the chancellor’s on-the-record rulings and her consideration of the fault alleged by Tammy, the chancellor did not' err in her determination. Because of the results of three separate trials in circuit court and the ultimate dismissal of the remaining counts against Dane, the chancellor did not abuse her discretion by considering the results from both the youth court and the circuit court and determining that the alleged fault was a neutral factor. We affirm the chancellor on this issue. Further, appropriate weight was given to the issue of fault, and no error resulted from the chancellor’s decision to exclude the youth-court brief from evidence, as the chancellor allowed into evidence the adjudication order *240 and considered the facts and circumstances surrounding the alleged sexual abuse.
VI. Whether the trial court manifestly erred in failing to consider and make on-the-record findings as to whether Tammy could reasonably pay the alimony awarded to Dane.
¶ 29. Tammy argues that the chancellor erred by not making an on-the-record finding regarding Tammy’s ability to pay Dane $8,421.75 per month for 180 months. The only support Tammy lends to this argument is this Court’s previous holding that chancellors must make an on-the-record Armstrong analysis when awarding alimony. Lourrey v. Lourrey, 25 So.3d 274, 280 (Miss.2009). As previously mentioned, the chancellor conducted her analysis pursuant to the Ferguson factors because she was equitably distributing the parties’ marital assets.
¶ 30. Lump-sum alimony can serve two distinct purposes. The first purpose is to aid the chancellor in equitably dividing the marital estate under the Ferguson factors. See Haney, 907 So.2d 948. The second purpose is to aid the chancellor in correcting an equitable deficit, resulting from the equitable distribution of the marital estate under the Armstrong factors. See Rogillio v. Rogillio, 57 So.3d 1246, 1249 (Miss.2011).
¶ 31. In Haney v. Haney, this Court found that the chancellor’s award of lump-sum alimony was allocated to equitably distribute the marital assets. Haney, 907 So.2d at 952. This Court discussed how, prior to Ferguson, lump-sum alimony was ■the central mechanism through which marital property was divided. Haney, 907 So.2d at 952. In Cheatham v. Cheatham, the Court set out factors to be taken into account when considering an award of lump-sum alimony. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). Based on the factors later presented in Ferguson, this Court stated:
Clearly, the Cheatham factors were simply an earlier attempt by this Court to provide a chancellor with guidelines for awarding what today is called an equitable distribution of marital assets, under appropriate circumstances. Indeed, we see no Ferguson factor which would be inappropriate in evaluating lump sum alimony. Although we continue to refer to certain payments as “lump sum alimony,” these payments are really no more than equitable distribution in the form of lump sum cash, rather than an equitable portion of certain property which cannot be divided equitably.
Haney, 907 So.2d at 955.
¶ 32. This Court later considered an award of lump-sum alimony and reiterated that “... the chancery court was obligated to apply the appropriate factors ... the Cheatham-Ferguson factors.” Yelverton v. Yelverton, 961 So.2d 19, 25 (Miss.2007). See also Dickerson v. Dickerson, 34 So.3d 637, 647-48 (Miss.Ct.App.2010) (After reviewing Haney and Yelverton, the court concluded that chancellors should consider lump-sum alimony under the Ferguson factors; however, an analysis under Cheatham is not reversible error.); George v. George, 22 So.3d 424, 427-30 (Miss.Ct.App.2009) (Lump-sum alimony was analyzed under this Court’s ruling in Haney, considering the Cheatham factors, while periodic alimony was analyzed under the factors set forth in Armstrong.); Dunn v. Dunn, 911 So.2d 591 n. 4 (Miss.Ct.App.2005) (acknowledging that, pursuant to Haney, the Ferguson factors should be considered when determining an award of lump-sum alimony).
¶ 33. In Lauro v. Lauro, this Court described alimony as something which is *241 contemplated subsequent to the equitable division of marital property. Lauro v. Lauro, 847 So.2d 843, 848 (Miss.2003). Lauro relies on the language set forth in Johnson v. Johnson, quoting:
If there are sufficient marital assets which, when equitably divided and considered with each spouse’s non-marital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party’s non-marital assets, leaves a deficit for one party, then alimony based on the value of non-marital assets should be considered.
Lauro, 847 So.2d at 848 (emphasis original) (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)). Lauro further explains that the Armstrong factors must be considered when awarding alimony. Lauro, 847 So.2d at 848. See Lowrey, 25 So.3d at 280. (“Failure to make an on-the-record ... analysis is manifest error.”).
¶ 34. If lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the Ferguson factors. Haney, 907 So.2d at 955. However, if the alimony, lump-sum or otherwise, is awarded subsequent to the equitable distribution of the marital assets, then chancellors must conduct their analysis under the Armstrong factors. Lauro, 847 So.2d at 848.
¶ 35. In the instant ease, the chancellor fully considered the award of lump-sum alimony under the Ferguson factors because the award served as a means to equitably divide the marital property. Therefore, the chancellor appropriately conducted a Ferguson analysis in the findings of facts and conclusions of law incorporated it into the final decree; thus, the chancellor did not fail to adequately consider Tammy’s ability to pay the award. This issue is without merit.
CONCLUSION
¶ 36. The chancellor did not apply an erroneous legal standard, was not clearly erroneous, nor was she manifestly wrong in her determinations. Further, her conclusions are supported by the evidence before this Court. Accordingly, the final decree of the Chancery Court of Warren County is affirmed.
¶ 37. AFFIRMED.
WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ„ CONCUR.

. Tammy was 33.34 percent owner of Aquilla Development, LLC.

.Ferguson established that chancellors must consider the following factors when determining equitable division of marital property:
1. Substantial contribution to the accumulation of the property, (a) Direct or indirect economic contribution to the acquisition of the property, (b) Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage,(c) Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets; 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise; 3.The market value and the emotional value of the assets subject to distribution; 4.The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse; 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution; 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties; 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and 8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.