RUSSELL, J.,
for the Court:
¶ 1. Howard Carney III appeals the chancery court’s judgment awarding Andrea Leigh Bell Carney the full use, title, and possession of the marital home, along with all of the equity in the home. He *455 argues that he is entitled to one-half of the equity in the marital home. He also argues that the chancellor erred listing his unvalued social security benefits under his share of the equitable distribution. Upon review, we find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Andrea and Howard were married on November 20, 1998, and separated on November 26, 2008. Two children were born of their marriage, Amanda Leigh Carney, born June 25,1999, and Katherine Emily Carney, born June 21, 2006.
¶ 3. On December 1, 2008, Andrea filed a complaint for divorce from Howard on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences. On September 9, 2009, Andrea filed an amended complaint for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and/or irreconcilable differences. On April 3, 2009, Howard filed a counter-complaint for divorce on the grounds of uncondoned adultery, habitual cruel and inhuman treatment, and/or irreconcilable differences. On March 4, 2009, the chancery court entered a temporary order, granting Andrea temporary custody of the two children of the marriage, child support of two-thousand dollars ($2,000.00) per month, and other relief. On January 13, 2010, the parties filed a consent withdrawing fault grounds and consenting to a divorce on the ground of irreconcilable differences. The parties asked the chancellor to determine the following issues: (1) child support; (2) alimony; (3) equitable distribution of assets; and (4) attorney’s fees.
¶ 4. On March 19, 2010, the court entered a memorandum opinion and final judgment of divorce based on irreconcilable differences. The chancellor awarded Andrea full use, title, and possession of the marital home, to include one-hundred percent of the equity in the home.
¶5. The marital home, known as the “Bell Property,” was the home of Andrea’s father and grandfather from 1937 until the home was purchased by her sister, Patricia Barnes. In early 2004, Patricia met an untimely death and her husband, Jason Barnes, placed the house on the market shortly thereafter. Andrea and Howard wanted to purchase the home, but they could not obtain the proper financing. In an effort to keep the home in the family, Debra and Bob Baylor (Baylors), another sister of Andrea and her brother-in-law, agreed to purchase the home.
¶ 6. On March 19, 2004, the Baylors purchased the home for $279,900. Andrea and Howard entered into a rental agreement with the Baylors where they would rent the home from the Baylors until they could secure financing. On April 6, 2004, Andrea and Howard began renting the home from the Baylors.
¶ 7. At the time of her death, Patricia left Andrea a $175,000 life-insurance policy. On May 14, 2004, Andrea gave the Baylors $165,000 from the life insurance policy to use as a down payment on the home. The Baylors financed the remaining purchase price.
¶ 8. On May 8, 2006, Andrea and Howard borrowed $70,000 from Tensas State Bank as a first mortgage. Of the $70,000 loan, they used $54,102.13 to pay off the balance of their loan with River Hills Bank. The remaining $14,925.87 was placed in their joint account. Also on May 8, 2006, a settlement statement was executed between Andrea, Howard, and the Baylors, and a warranty deed was executed conveying the property to Andrea.
¶ 9. On February 28, 2007, Andrea and Howard took out a second mortgage on the home for $10,030 to pay some out *456 standing bills. On May 28, 2009, the property appraised for approximately $253,800. The chancellor found that the first mortgage had a remaining balance of $64,399.29, and the second mortgage had a remaining balance of $3,348.14, at the time of the divorce. Taking the 2009 appraisal value of $253,800, minus the balances of the first and second mortgages at the time of the divorce (totaling $67,747.43), the chancellor determined that the home had equity in the amount of $186,052.57, which was awarded to Andrea in full.
¶ 10. On April 13, 2010, Howard appealed, contending that he is entitled to one-half of the equity in the marital home. Other facts will be discussed as necessary.
DISCUSSION
¶ 11. Our scope of review in domestic-relations matters is limited. Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). The appellate court “will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Id. (citing Bell v. Parker, 563 So.2d 594, 596-597 (Miss.1990)). “[0]n appeal[,] this Court is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong.” Id. (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990)).
I. Whether the chancery court erred in awarding Andrea the full amount of the equity from the marital home.
¶ 12. As previously noted, the chancellor awarded Andrea the full use, title, and possession of the marital home, along with the full amount of the equity in the home, which totaled $186,052.56. Howard argues that the chancellor’s award of the entire amount of the equity to Andrea was not supported by credible evidence.
¶ 13. “When attempting to equitably divide property at issue in a divorce, the chancellor should first classify the parties’ assets as marital or non-marital based on Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994).” Jenkins v. Jenkins, 67 So.3d 5, 9 (¶ 10) (Miss.Ct.App.2011). Our supreme court held in Hemsley that “[a]ssets acquired or accumulated during the course of a marriage are subject to equitable distribution unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Hemsley, 639 So.2d at 914. As such, “the chancellor may equitably divide only the property that is deemed marital property.” Jenkins, 67 So.3d at 9 (¶ 10). Non-marital property may become marital property as follows:
Property brought into the marriage by one partner and used by the family becomes a marital asset. Assets which are classified as non-marital, such as inheritances, may be converted into marital assets if they are commingles with marital property or utilized for domestic purposes, absent an agreement to the contrary. Commingled property is a combination of marital and non-marital property in which the non-marital property has lost its status as non-marital property by virtue of its being combined with the marital property.
Boutwell v. Boutwell, 829 So.2d 1216, 1221 (¶¶ 19-20) (Miss.2002) (internal citations omitted).
¶ 14. In this case, the chancellor found the following:
[Andrea’s] deposit of the money from the life insurance policy (a non-marital asset) into the joint account of the parties and then the use of the funds toward the purchase of the marital home *457 constitutes commingling and use of the funds for familial purposes. The deposit of the life insurance proceeds into the joint account converted the funds from a non-marital asset to a marital asset. The “Bell” Home was [Andrea’s] grandmother’s and has always been in the “Bell” family[;] however[,] with [Howard] and [Andrea] and the family [living] in the “Bell” Home, making it the marital domicile, the property was commingled and is marital property subject to equitable distribution. The [c]ourt finds that the equity in the house is $186,052.57 and is a marital asset.
We find that the chancellor properly determined that the equity in the house is a marital asset under the family-use doctrine and due to the commingling of assets. See id.
¶ 15. “After classifying the parties’ assets as either marital or non-marital, the chancellor should then proceed to equitably divide the property using the factors set forth by the supreme court in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).” Jenkins, 67 So.3d at 9 (¶ 11). The Ferguson factors are as follows:
(1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows: (a) Direct or indirect economic contribution to the acquisition of the property; (b) Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; (c) Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
(2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
(3) The market value and the emotional value of assets subject to distribution.
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and
(8) Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928 (¶ 10).
¶ 16. In this case, the chancellor applied the Ferguson factors as follows:
(1) Substantial contribution to the accumulation of the property.
(a) Direct or indirect contribution to the acquisition of the property.
The testimony indicated that [Andrea] approached [Howard] with the idea of purchasing the “Bell” home. [Andrea] testified that she wanted to purchase the home so that it would remain in the family. The testimony indicated that both parties contributed money to a joint account[,] which was used to purchase materials and other items used on the house. There was testimony that [Howard] and [Andrea] *458 performed labor involving work on the home.
(b) Contribution to the stability and harmony of the marital and family relationships as measured by quality and quantity of time spent on family duties and duration of the marriage.
The parties were married for ten (10) years before their separation. [Andrea] testified that once [Howard] “went on the road[,]” this caused a strain on them relationship.
(c) Contribution to the education, training!,] or other accomplishments] bearing on the earning power of the spouse accumulating the assets.
No evidence was offered regarding this issue.
(2) The degree to which each spouse has expended, withdrawn!,] or otherwise disposed of material assets and any prior distribution of such assets by agreement, decree[,] or otherwise.
No evidence was offered regarding this issue.
(3) The market value and the emotional value of the assets subject to distribution.
[Andrea] has strong emotional ties to the marital home[,] as it was the family “Bell” home of her paternal grandmother. The market value of the assets subject to distribution is $237,503.72.
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse.
[Andrea] has a Smith Barney retirement account that has a present value of $19,759.00. [Andrea] testified that this account was opened and the funds were accumulated prior to the marriage. [Andrea] has non-marital furniture in the amount of $1,480.00.
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.
The evidence reflects that the balance on the first mortgage on the marital home ... is $64,399.29. There is also a second mortgage on the marital home with a balance of $3,348.14. The balance owed on the 2005 Chevrolet Truck is $10,712.20. The balance owed on the 2007 29FKS travel trailer is $12,712.88. The parties also have other unpaid bills.
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.
The parties do not have sufficient liquid assets to be utilized to eliminate the need for periodic alimony.
(7) The needs of the parties for financial security with due regard to the combination of assets, incomef,] and earning capacity.
Both parties are currently employed. [Andrea] is employed with the Louisiana Department of Corrections and [Howard] is employed with the State of Louisiana as a college welding instructor.
(8) Any other factor which in equity should be considered.
There are no other specific factors which warrant consideration.
¶ 17. After applying the Ferguson factors, the chancellor awarded Andrea the following assets:
Marital Home: $186,052.57 in equity
Marital Household Furnishings: $5,175.00
*459 2002 Toyota Sequoia: $7,170.00
TSB Checking: $58.00
RHB Checking: $800.00
DOC-CU Savings: $800.00
State of LA Retirement: $24,000.00
Total: $224,050.57
¶ 18. Andrea was required to pay the following debts:
First Mortgage with Tensas State Bank: $64,399.29
Capital One: $2,307.04
HSBC: $186.80
Total: $66,893.13
¶ 19. Howard was awarded the following assets:
2005 Chevrolet Truck: $327.80 in equity
2007 Travel Trailer: $3,677.12 in equity
Social Security Benefits: Actual Value Unknown
TSB Checking: $875.21
TSB Savings: $43.52
401K: $7,279.50
Tools: $1,250.00
Total: $13,453.15
¶20. Howard was ordered to pay the following debts:
2005 Chevrolet Truck: $10,712.20
2007 Travel Trailer: $12,712.88
Jon Barry & Assoc.: $551.42
Second Mortgage with Tensas State
Bank: $3,348.14
Capital One: $2,765.65
Orchard Bank: $1,765.00
Total: $31,855.29
¶ 21. “Equitable distribution does not mean equal distribution.” Jenkins, 67 So.3d at 11 (¶ 13) (quoting Seymour v. Seymour, 960 So.2d 513, 519 (¶ 15) (Miss.Ct.App.2006)). “Mississippi is not a community property state; thus, the chancellor holds no obligation to divide the marital property equally.” Id. at 12 (¶ 15). Further, as this Court has previously noted: “No requirement exists dictating that [one spouse] must receive half of the equity in the marital home.” Id. at 11 (¶ 13). • Rather, “the goal as it pertains to equitable division is ‘a fair division of marital property based on the facts of each case.’ ” Id. (quoting Seymour, 960 So.2d at 519 (¶ 15)).
¶ 22. The record before us today shows credible evidence supporting the chancellor’s exercise of discretion in equitably dividing the parties’ marital property and awarding Andrea the entire amount of the equity from the marital home. We recognize “the limited standard of review that appellate courts utilize when reviewing a chancellor’s equitable division of the marital property.” Id. at 12 (¶ 15). This Court further recognizes that “appellate courts lack the authority to overrule a chancellor’s property division and distribution absent a finding of manifest error.” Id. After examining the equitable division of property as a whole, we find that the chancellor’s decision was supported by credible evidence. Therefore, we affirm the chancellor’s division of the marital property.
II. Whether the chancellor erred in considering Howard’s unvalued social security benefits as part of his equitable share.
¶ 23. Howard contends that the chancellor erred by including his social security benefits in the marital assets equitably distributed to Howard with a notation reading “actual value unknown.” He argues that “based in part on this unvalued asset, the chancellor proceeded to deprive Howard of any portion of the $186,000 of equity in the marital home.”
¶ 24. The chancellor found Howard’s future eligibility for social security benefits was a marital asset. The chancellor fur *460 ther noted that “the [c]ourt considers in its equitable distribution of assets that [Howard] will be eligible to receive social security benefits.” Finally, the chancellor found that “it [did] not have sufficient evidence to determine the value of [Howard’s] eligibility.”
¶ 25. After reviewing the record, we find that because there was no value assigned to his social security benefits and no specific monetary amount awarded, any error regarding the award of future eligibility of social security benefits would be harmless. We also note that while the chancellor included Howard’s future social security as a marital asset but failed to consider Andrea’s future social security benefits, this error was also harmless. See Traxler v. Traxler, 730 So.2d 1098, 1102-03 (¶ 23) (Miss.1998) (holding that a chancellor’s failure to discuss a wife’s social security benefits in equitably dividing the parties’ property was error, but the error was harmless because the “overall distribution was equitable.”). Finding no error, we affirm.
¶ 26. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, MAXWELL AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., AND IRVING, P.J., NOT PARTICIPATING.