# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00222-SCT

## CONSOLIDATED WITH

## NO. 2010-CT-00646-SCT

*HOWARD WILSON CARNEY, III*

*v.*

*ANDREA LEIGH BELL CARNEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/12/2015 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| TRIAL COURT ATTORNEYS: | TRAVIS T. VANCE, JR. |
| | J. MACK VARNER |
| | CLIFFORD C. WHITNEY, III |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CLIFFORD C. WHITNEY, III |
| | J. MACK VARNER |
| ATTORNEY FOR APPELLEE: | TRAVIS T. VANCE, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/13/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. This is the second appeal of the equitable distribution of assets of Howard Carney III and Andrea Bell Carney by the Chancery Court of Warren County. In the first appeal, this Court reversed and remanded, holding that the chancellor manifestly had erred by awarding 100% of the equity in the marital home to the wife, in the absence of an explanation for that award. *Carney v. Carney*, 112 So. 3d 435, 439 (Miss. 2013). On remand, the chancellor

reweighed the applicable factors under *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), and again awarded 100% of the equity in the marital domicile to Andrea Carney, explaining that she had awarded all the equity to the wife to avoid an award of lump sum alimony, and providing additional reasons for the award, which were that the majority of the equity had come from the wife's contribution of $165,000 in life insurance proceeds toward the purchase of the residence, and that the wife had strong emotional ties to that home, which had been her family's "home place" since 1937. Under the deferential standard of review applicable to the decisions of the chancery court, we find that the chancellor's equitable distribution on remand was not manifestly wrong or clearly erroneous. Therefore, we affirm.

## FACTS[1]

¶2.     The parties were married on November 20, 1998. The couple had two children, Amanda Leigh Carney, born in June 1999, and Katherine Emily Carney, born in June 2006. They purchased what was to be their marital home, known as the "Bell property," in 2006. The house, which had been constructed in 1937, was the former home of the wife's grandparents and father. Later, it was purchased by the wife's sister, Patricia Barnes. But after Patricia Barnes passed away unexpectedly in 2004, her widowed husband placed the Bell property on the market.

¶3.     Patricia Barnes had designated her sister, Andrea Carney, beneficiary of her $175,000 life insurance policy. Although the Carneys wanted to purchase the Bell property, the life insurance proceeds would not cover the full purchase price, and they were unable to obtain

---

[1] The facts of the case are taken largely from the prior opinion of this Court. *Carney*, 112 So. 3d 435.

2

financing for the remaining amount. So another of Andrea Carney's sisters, Debra, and her husband, Bob Bayler, purchased the Bell property for $279,000 and rented it to Andrea and Howard Carney. Andrea paid the Baylers $165,000 from the life insurance proceeds as a down payment on the home. The Baylers financed the remainder of the purchase price with River Hills Bank, and they paid the mortgage installments using the Carneys' monthly rental payments.

¶4.    On May 8, 2006, Andrea and Howard Carney borrowed $70,000 from Tensas State Bank. Of those funds, they used $54,102.13 to pay off the balance of the Baylers' mortgage with River Hills Bank. They placed the remaining $14,925.87 in a joint account. On May 8, 2006, Andrea, Howard, and the Baylers executed a settlement statement and the Baylers executed a warranty deed that conveyed the Bell property to Andrea Carney. Later, the Carneys placed a second mortgage on the Bell property for $10,030 to pay bills.

¶5.    Howard and Andrea Carney separated on December 1, 2008. Andrea filed a complaint for divorce in December 2008, alleging grounds of habitual cruel and inhuman treatment, and/or irreconcilable differences, and in September 2009 she filed an amended complaint adding the ground of adultery. Howard Carney filed a countercomplaint for divorce on the grounds of habitual cruel and inhuman treatment, adultery, and/or irreconcilable differences. The chancery court entered a temporary order in March 2009 that granted Andrea Carney custody of the children and $2,000 per month in child support and temporary maintenance. On January 13, 2010, the parties filed a consent to a joint withdrawal of fault grounds,

requesting an irreconcilable differences divorce. The parties asked that the chancellor determine the issues of child support, property division, alimony, and attorney fees.

¶6. On March 19, 2010, the chancellor entered a final judgment granting an irreconcilable differences divorce and equitably dividing the parties' assets under *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). The chancellor awarded title and possession of the marital home to Andrea Carney, and additionally awarded her all of the equity in the home, for a total value of $186,052.57. After the equitable division, Andrea's assets totaled $224,050.57. Howard Carney was awarded assets totaling $13,453.15.[2] He was assessed $31,855.29 in

---

[2] The chancellor distributed the assets and debts as follows:

Wife was awarded the following marital assets:

    Marital Home: $186,052.57 in equity

    Marital Household Furnishings: $5,175.00

    2002 Toyota Sequoia: $7,170.00

    TSB Checking: $53.00

    RHB Checking: $800.00

    DOC–CU Savings: $800.00

    State of LA Retirement: $24,000.00

    Total: $224,050.57

Wife was required to pay the following debts:

    First Mortgage with Tensas State Bank: $64,399.29

    Capital One: $2,307.04

marital debt, and Andrea Carney was assessed $66,898.13 in marital debt. Pursuant to the parties' agreement, the chancellor awarded custody of the minor children to wife and granted

HSBC: $186.80

Total: $66,893.13

Husband was awarded the following assets:

2005 Chevrolet Truck: $327.80 in equity

2007 Travel Trailer: $3,677.12 in equity

Social Security Benefits: Actual Value Unknown

TSB Checking: $875.21

TSB Savings: $43.52

401K: $7,279.50

Tools: $1,250.00

Total: $13,453.15

Husband was ordered to pay the following debts:

2005 Chevrolet Truck: $10,712.20

2007 Travel Trailer: $12,712.88

Jon Barry & Assoc.: $551.42

Second Mortgage with Tensas State Bank: $3,348.14

Capital One: $2,765.65

Orchard Bank: $1,765.00

Total: $31,855.29

visitation to husband. The chancellor ordered husband to pay $590 per month as child support.

¶7.     The chancellor deemed the Bell property a marital asset and determined that, at the time of the divorce, the Carneys' first mortgage had a remaining balance of $64,399.29, and their second mortgage had a remaining balance of $3,348.14. On May 28, 2009, the Bell property was appraised for $253,800, leaving equity of $186,052.57, after subtraction of the mortgage balances. The chancellor awarded Andrea Carney title to the property, possession of the property, and the entire $186,052.57 in equity.

¶8.     The chancellor also found that, under the factors from ***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993), the wife needed alimony to meet the needs of herself and the minor children. After considering the factors from ***Tilley v. Tilley***, 610 So. 2d 348, 352 (Miss. 1992), the chancellor found that the facts did not justify lump sum alimony. But after considering the overlapping factors from ***Armstrong***[3] and ***Davis v. Davis***, 832 So. 2d 492

---

[3] In ***Armstrong***, this Court held that "[t]he following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:"

> 1. The income and expenses of the parties; 2. The health and earning capacities of the parties; 3. The needs of each party; 4. The obligations and assets of each party; 5. The length of the marriage; 6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; 7. The age of the parties; 8. The standard of living of the parties, both during the marriage and at the time of the support determination; 9. The tax consequences of the spousal support order; 10. Fault or misconduct; 11. Wasteful dissipation of assets by either party; or 12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

***Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993).

(Miss. 2002), the chancellor found that the wife needed periodic alimony. However, the chancellor made no award of periodic alimony, finding that "there are no liquid assets available to award periodic alimony."

¶9.     Howard Carney appealed, and this Court assigned that appeal to the Court of Appeals. The husband argued, *inter alia*, that the chancellor had erred by awarding the wife all the equity in the marital home. ***Carney v. Carney***, 112 So. 3d 453, 456 (Miss. Ct. App. 2012). Neither party raised an appellate challenge to the chancellor's findings on alimony. The Court of Appeals affirmed the property division. ***Id.*** at 460. That court found that the chancellor properly had deemed the equity in the Bell property a marital asset due to commingling and under the family use doctrine. ***Id.*** at 457. The chancellor had found that the wife's deposit of the life insurance proceeds into the parties' joint account and the use of those funds to purchase the marital home constituted commingling and use of the funds for family purposes. ***Id.*** at 456-57. Therefore, the chancellor found, the life insurance proceeds had been converted from the wife's separate property to a marital asset. ***Id.*** Thus, the chancellor concluded that the Bell property was a marital asset. ***Id.*** The Court of Appeals affirmed the chancellor's award of 100% of the equity in the Bell property to the wife under the ***Ferguson*** factors, stating that the decision was supported by credible evidence and noting that, in Mississippi, a chancellor is under no obligation to divide the marital estate equally. ***Id.*** at 459.

¶10.    Howard Carney filed a petition for certiorari, which this Court granted. ***Carney***, 112 So. 3d at 435. This Court unanimously reversed the part of the Court of Appeals decision that

7

had affirmed the equitable distribution. *Id.* at 439. Justice Pierce, speaking for the Court, wrote that:

> The chancellor found the "Bell Property" was marital property under the commingling-of-assets and marital-use doctrines. ***Hemsley v. Hemsley***, 639 So. 2d 909 (Miss. 1994). . . . On this basis, the chancellor found that the home was a marital asset. But the chancellor did not allot Howard any share in the home's equity. This created a significant disparity in the division of the marital estate. Further, by absolving Andrea from obligations on the second mortgage's remaining balance and assigning the balance to Howard, the chancellor's division resulted in even a greater disparity than that indicated in the above fact portion of this opinion. Technically, since this debt followed Howard, Andrea was awarded $189,400.71 in equity, not $186,052.57.
>
> In dividing the marital estate, the chancellor conducted a thorough ***Ferguson*** analysis for the record. But we can find no explanation and/or justification therein for the disparity that resulted in the marital-estate division. . . . And it appears to this Court that the chancellor, perhaps unintentionally, but nonetheless ultimately, treated those funds as nonmarital. This was manifest error. Having found that those funds were commingled with the marital estate, the chancellor was required to treat those funds as marital and to distribute and/or consider them equitably under the ***Ferguson*** factors.
>
> [W]e iterate that awarding 100 percent equity in a marital asset to one party is not error per se. But, in this instance, based on the record before this Court, we are unable to ascertain why the chancery court awarded the entire equity of the marital home solely to Andrea, without awarding Howard some other equitable share in the marital estate or equitable relief from the marital debt. Accordingly, we reverse and remand this matter for further proceedings consistent with this opinion.

*Id.* at 438-39.

¶11. On remand, the chancellor again awarded all of the equity in the marital residence to the wife; but this time she imposed repayment of the $3,348.14 second mortgage upon the wife instead of the husband. Additionally, the chancellor provided a thorough explanation for the home equity award in the judgment on remand, explaining that, in her original

decision, she had awarded all of the home equity to the wife to avoid the need for lump sum alimony. The chancellor stated that, "[i]f the court had not made such an award, [Andrea Carney] would have been entitled to lump sum alimony, and any share in the marital home awarded to [Howard Carney] would have been awarded to [Andrea Carney] as lump sum alimony." The chancellor added that "[o]n remand this court hereby recites that [Andrea Carney] was awarded the full amount of the equity in the home for the following reasons . . . ." The chancellor proceeded to articulate four reasons for the award: (1) "it is undisputed that $165,000 of the life insurance proceeds went directly to the payment of the [debt on the] marital home and were the substantial contribution of [Andrea Carney]. Much of the equity in the home came from this source"; (2) "the evidence indicated that [Andrea Carney] had strong emotional ties to the home . . . [f]urther, there was approximately a year and a half wherein [Howard Carney] worked out of state and did not live at the home, although he testified he came back several times"; (3) "both parties contributed in some way to the upkeep of the home, although [Andrea Carney] testified that she paid the mortgage, insurance, and taxes for the home and that [Howard Carney] contributed mostly to maintenance"; and (4) "the court considered awarding [Howard Carney] a percentage of the equity in the home and awarding [Andrea Carney] lump sum alimony . . . the court instead equitably divided the assets of the parties and was able to completely eliminate any potential alimony award."

¶12.    Then, the chancellor made new findings on the *Ferguson* factors. Following those factors, the chancellor must consider the following:

9

(1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows: (a) Direct or indirect economic contribution to the acquisition of the property; (b) Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; (c) Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

(2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

(3) The market value and the emotional value of assets subject to distribution.

(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7) The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and

(8) Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. "[N]ot all of the *Ferguson* factors must be considered in every case." *Phillips v. Phillips*, 904 So. 2d 999, 1003 (Miss. 2004). Instead, the chancellor must consider those factors relevant to the property before the chancery court. *Id.*

¶13.    In her findings on the *Ferguson* factors in the judgment after remand, the chancellor added new findings to her original ones, as follows:

(1) Substantial contribution to the accumulation of the property.

10

(a) Direct or indirect contribution to the acquisition of the property.

¶14. In the original judgment, the chancellor had recognized that both parties had contributed money to a joint account from which they had purchased materials for the house, and that both parties had performed labor on the house. In the judgment after remand, the chancellor additionally found that Andrea Carney had contributed $165,000 to the acquisition of the marital home, and had paid the mortgage, insurance, and tax payments, while Howard Carney had contributed to the home's upkeep. The chancellor also recognized that both parties had placed their incomes into the joint account for marital expenses.

> (b) Contribution to the stability and harmony of the marital and family relationships as measured by the quality and quantity of time spent on family duties and duration of the marriage.

¶15. In both judgments, the chancellor found that the parties had been married for ten years before separating, and that the husband's travel for his employment had strained the marital relationship.

> (c) Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

¶16. The chancellor again found that no evidence had been offered on this factor.

> (2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

¶17. The chancellor again found that no evidence had been offered on this factor.

> (3) The market value and the emotional value of the assets subject to distribution.

¶18. The chancellor again found that "Mrs. Carney has strong emotional ties to the marital home as it was the family 'Bell' home of her paternal grandmother," and that the market

11

value of the assets subject to distribution was $237,503.72. In the judgment after remand, the chancellor added that the parties had lived in the marital home for about four years before their separation.

(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to distribution.

¶19. The chancellor again found that the wife had a Smith Barney account with a present value of $19,759, and nonmarital furniture with an appraised value of $1,480.

(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.

¶20. The chancellor's findings on this factor did not change. The chancellor found that the balance on the first mortgage was $64,399.29, and the balance on the second mortgage was $3,348.14. The chancellor found that the balance on a 2005 Chevrolet truck was $10,712.20, that the balance on a 2007 29FKS travel trailer was $12,762.88, and that the parties had other unpaid bills.

(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.

¶21. Again, the chancellor found that the parties lacked sufficient assets that could be used to eliminate the need for periodic alimony. In the judgment after remand, the chancellor added that "the property division eliminates the need for lump sum alimony to be paid to Mrs. Carney."

(7) The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity.

12

¶22.    The chancellor again found that Andrea Carney was currently employed by the Louisiana Department of Corrections, and Howard Carney was currently employed by the State of Louisiana as a college welding instructor. In the judgment after remand, the chancellor additionally found that, although the wife had a higher salary than the husband, she also had higher monthly expenses. The chancellor added that Andrea Carney has nonmarital assets totaling $21,239, including the Smith Barney account and the nonmarital furniture.

(8) Any other factor which in equity should be considered.

¶23.    In both judgments, the chancellor found that no other specific factors warranted consideration.

¶24.    The chancellor made no further findings regarding alimony but stated that the wife's request for alimony was "denied in light of the equitable division of the marital assets."

**STANDARD OF REVIEW**

¶25.    "This Court employs a limited standard of review of property division and distribution in divorce cases." ***Bowen v. Bowen***, 982 So. 2d 385, 393 (Miss. 2008) (quoting ***Owen v. Owen***, 928 So. 2d 156, 160 (Miss. 2006)). "This Court will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Bell v. Parker***, 563 So. 2d 594, 596-97 (Miss. 1990). We will not substitute our judgment for that of the chancellor. ***Owen***, 928 So. 2d at 160. "The chancellor's ruling o[n] the division and distribution 'will be upheld if it is supported by

13

substantial credible evidence.'" ***Mabus v. Mabus***, 890 So. 2d 806, 824 (Miss. 2003) (quoting

***Owen v. Owen***, 798 So. 2d 394, 397 (Miss. 2001)).

## ANALYSIS

WHETHER THE CHANCELLOR'S AWARD OF THE EQUITY IN THE MARITAL HOME TO ANDREA CARNEY RENDERED THE EQUITABLE DISTRIBUTION CLEARLY ERRONEOUS.

¶26. Howard Carney contends that the equitable distribution performed by the chancellor on remand was clearly erroneous. He complains that, except for assessing the second mortgage against the wife, the chancellor's equitable distribution after remand did not change. He avers that the equitable distribution after remand bestowed 93% of the marital assets upon Andrea Carney, leaving him with a mere 7%. He argues that the chancellor again erroneously treated the $165,000 in life insurance proceeds as the wife's separate property despite this Court's admonition that the funds could not be treated as her separate property due to commingling. He also avers that the chancellor's decision to award all of the equity to his former spouse to avoid an award of lump sum alimony cannot stand because the chancellor found that the facts did not justify lump sum alimony under ***Tilley v. Tilley***, 610 So. 2d 348 (Miss. 1992). He further contends that the wife was not entitled to alimony in any form.

¶27. When conducting a property division in a divorce case, the chancellor first must classify each asset as marital or nonmarital. ***Johnson v. Johnson***, 650 So. 2d 1281, 1287 (Miss. 1994). Then, the chancellor must equitably divide the marital assets in accordance with the factors specified in ***Ferguson v. Ferguson***. ***Johnson***, 650 So. 2d at 1287 (citing

14

*Ferguson*, 639 So. 2d at 928). It is well settled that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "When the facts and circumstances warrant an equitable division of the martial estate of one-half or greater and such a division complies with the *Ferguson* principles, then we are duty bound to let such a distribution stand." *Phillips v. Phillips*, 904 So. 2d 999, 1003 (Miss. 2004). The chancellor's focus must be on equity rather than equality. *Id.*

¶28.    If, after equitable division, an equitable deficit exists, the chancellor then should consider alimony. *Rogillio v. Rogillio*, 57 So. 3d 1246, 1248 (Miss. 2011). "Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor." *Parsons v. Parsons*, 678 So. 2d 701, 703 (Miss. 1996). Regarding lump sum alimony, this Court has drawn the following distinction:

> Lump-sum alimony can serve two distinct purposes. The first purpose is to aid the chancellor in equitably dividing the marital estate under the *Ferguson* factors. *See Haney*[ *v. Haney*], 907 So. 2d 948 [(Miss. 2005)]. The second purpose is to aid the chancellor in correcting an equitable deficit, resulting from the equitable distribution of the marital estate under the *Armstrong* factors. *See Rogillio v. Rogillio*, 57 So. 3d 1246, 1249 (Miss. 2011).

*Davenport v. Davenport*, 156 So. 3d 231, 240 (Miss. 2014). This Court has held that it is within the chancellor's equitable powers to award lump sum alimony in lieu of periodic alimony. *Pearson v. Pearson*, 761 So. 2d 157, 166 (Miss. 2000). "In a proper case, the chancellor can award alimony payable in one lump sum or periodic alimony, payable monthly, or both, dependent upon the circumstances of the parties." *Tilley*, 610 So. 2d at 351.

15

The chancellor's aim in crafting any alimony award should be to bring finality to the parties' economic relationship, "as justice and equity require." **Pearson**, 761 So. 2d at 166.

¶29. We reject Howard Carney's argument that the chancellor treated the life insurance proceeds as the wife's separate property. In the judgment on remand, the chancellor expressly recognized this Court's concern that, in the original judgment, she, perhaps unintentionally, had treated the life insurance proceeds as nonmarital. Therefore, the chancellor made clear that she had awarded the equity in the marital home to the wife as part of the equitable distribution of the marital assets under the **Ferguson** factors. Thus, the chancellor did not treat the life insurance proceeds as the wife's separate property in the judgment on remand.

¶30. And, in the judgment on remand, the chancellor also made additional findings explaining the reasons for the award. First, the chancellor found that the wife had made a substantial contribution to the acquisition of the marital home because she had contributed $165,000 in life insurance proceeds to the marital estate that then were used as the down payment on the home. In **Singley v. Singley**, 846 So. 2d 1004, 1011 (Miss. 2002), Mr. Singley had inherited $70,000 from his mother that was converted to marital property when he contributed it toward the purchase of the marital home. In equitably dividing the marital home, the chancellor failed to take Mr. Singley's contribution into consideration by adjusting the **Ferguson** distribution accordingly. **Id.** at 1012. This Court reversed, holding that, because a chancellor is not required to distribute the marital property equally, a chancellor can adjust the **Ferguson** distribution in light of one spouse's substantial monetary contribution to the marital home. **Id.** The Court cited **Henderson v. Henderson**, in which a

16

couple had used funds contributed by one spouse's parents as a down payment on a jointly owned home, and the chancellor bestowed sole ownership of the home upon the spouse whose parents had made the contribution. *Id.* (citing **Henderson v. Henderson**, 703 So. 2d 262, 265 (Miss. 1997)). The Court quoted **Henderson**'s reasoning that, "[t]he fact that Mary's parents gave her a significant portion of the down payment is certainly one of the **Ferguson** factors that the chancellor should have considered when he divided the property, but it is not the only factor to be considered." **Singley**, 846 So. 2d at 1012.

¶31. The Court of Appeals applied **Singley** in **Allgood v. Allgood**, 62 So. 3d 443 (Miss. 2011). In a fact pattern strikingly similar to that presented by this case, Mr. Allgood inherited $60,000, placed it in a joint account, and then used it to prepay the mortgage balance on the marital home. *Id.* at 448. Due to Mr. Allgood's use of his separate funds for a family purpose, the chancellor classified the marital home in which he had invested those funds as marital property. *Id.* But in the equitable distribution, the chancellor credited Mr. Allgood for his significant contribution of separate property. *Id.* The Court of Appeals affirmed, stating that, under **Singley**, "[a] chancellor possesses the discretion to adjust equitably the **Ferguson** distribution in recognition of a separate contribution of a spouse," and "[t]his Court can find no abuse of discretion in allowing [the husband] credit for the inherited funds used to pay off the mortgage." *Id.* at 448-49. Under **Singley** and **Allgood**, the chancellor did not err by crediting Andrea Carney, in the **Ferguson** analysis, with her sizeable contribution to the marital home.

17

¶32. The chancellor also considered Andrea Carney's significant emotional connection to the marital home. Under *Ferguson*, the emotional value of the marital home should be considered, if relevant. *Ferguson*, 639 So. 2d at 928. In *Scott v. Scott*, 835 So. 2d 82, 86-87 (Miss. Ct. App. 2010), the Court of Appeals held that the chancellor had erred by neglecting to consider the emotional value of a home situated on one spouse's inherited property and surrounded by the homes of the spouse's other relatives. In this case, the testimony established that the Bell property had been the wife's family's "home place," since its construction in 1937. It was undisputed that Andrea Carney had expended considerable effort to keep the home in the family by arranging for her sister and brother-in-law to purchase it after the death of her sister, and subsequently purchasing it when she and the husband were able to obtain financing. Given this evidence, it was appropriate for the chancellor to place much weight upon this factor in the decision to award the marital home to Andrea Carney in full.

¶33. The chancellor also placed significant weight on the sixth *Ferguson* factor, which is "the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties." *Ferguson*, 639 So. 2d at 928. The chancellor reasoned that awarding all the equity to the wife eliminated the need for lump sum alimony. Howard Carney contests this *Ferguson* finding on the ground that the chancellor's original judgment, which was incorporated into the judgment on remand, found that lump sum alimony was not justified

18

by the facts. He also argues that the chancellor's reliance on this factor was incorrect because Andrea Carney was not entitled to alimony in any form.

¶34. In the original judgment, in denying Andrea Carney's request for alimony, the chancellor made certain fact findings on alimony which were incorporated in their entirety into the judgment on remand. First, the chancellor found that, under the factors from *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993), the wife "need[ed] alimony to meet the needs of her[self] and her minor children." Although the chancellor found that the wife was entitled to periodic alimony, though none was awarded due to lack of assets, the chancellor found that the facts did not justify an award of lump sum alimony under the factors from *Tilley v. Tilley*, 610 So. 2d 348 (Miss. 1992).

¶35. The factors cited in *Tilley v. Tilley* for the determination of lump sum alimony were gleaned from *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988). *Tilley*, 610 So. 2d at 352 (quoting *Cheatham*, 537 So. 2d at 438). *Cheatham* predates *Ferguson*, and "the *Cheatham* factors were simply an earlier attempt by this Court to provide a chancellor with guidelines for awarding what today is called an equitable distribution of marital assets, under appropriate circumstances." *Haney v. Haney*, 907 So. 2d 948, 955 (Miss. 2005). Because the *Ferguson* and *Cheatham* factors serve the same purpose, this Court has held that chancellors can rely on *Ferguson* instead of *Cheatham* when using lump sum alimony as a mechanism for equitably dividing marital assets. *Lewis v. Pagel*, 172 So. 3d 162, 176 (Miss. 2015) (citing *Haney*, 907 So. 2d at 955). "But when the chancellor awards lump-sum or periodic alimony after equitably dividing the estate, the chancellor should consider the *Armstrong*

19

factors." **Lewis**, 172 So. 3d at 176 (citing **Davenport**, 156 So. 3d at 241). Here, the chancellor awarded Andrea Carney the equity in the home as part of the equitable distribution of marital assets under **Ferguson**. Therefore, the fact that the chancellor found that an additional award of lump sum alimony was not warranted under the **Cheatham** factors is irrelevant to the chancellor's **Ferguson** distribution.

¶36.    We turn to the chancellor's analysis of the sixth **Ferguson** factor and the determination that the wife should receive the equity in the Bell property to avoid an award of lump sum alimony. In denying Andrea Carney's request for alimony, the chancellor found that she was entitled to periodic alimony, but that no liquid assets were available to fund such an award. In her **Ferguson** analysis, the chancellor stated that "the court considered awarding [Howard Carney] a percentage of the equity in the home and awarding [Andrea Carney] lump sum alimony. The court instead equitably divided the assets of the parties and was able to completely eliminate any alimony award."

¶37.    Howard argues that the chancellor's analysis of this factor was erroneous because the facts did not support the chancellor's finding that Andrea Carney was entitled to periodic alimony. In the **Armstrong** analysis, the chancellor found that the parties had no significant income disparity and that both parties' expenses exceeded their incomes. But the chancellor found that, because the wife had custody of the two minor children, whose reasonable needs exceeded her income, she needed alimony to support herself and the parties' children. The fact that one spouse will have custody of the minor children and will be required to pay for or personally provide child care is a relevant factor under **Armstrong**. **Armstrong**, 618 So.

20

2d at 1280. But the father argues that the chancellor's analysis of this factor was erroneous because the chancellor never explained why the $590 per month she ordered him to pay in child support was not adequate, along with the mother's income, to support the children.

¶38.    The father's argument assumes that, but for the finding that the mother was entitled to alimony, the chancellor would have awarded him half the equity in the house, totaling approximately $93,000. But as explained above, under *Singley* and *Allgood*, the chancellor was entitled to weigh Andrea Carney's substantial contribution of $165,000 toward the purchase of the marital home in her favor in the equitable distribution. We note that, if $165,000 is deducted from the $186,052.57 in equity, $21,052.57 remains. The chancellor articulated that, if she had given some of the equity to Howard in the *Ferguson* analysis, she would have ordered him to pay alimony. Given the reality that both parties' expenses exceeded their incomes and Andrea Carney had greater expenses due to her custody of the minor children, the chancellor's finding that the award of the equity to her negated the need for alimony was not manifestly erroneous. While the dissent would reverse because there was no income disparity and the wife's separate estate was larger, the considerations discussed above demonstrate that the chancellor's findings on *Ferguson*'s alimony factor were not manifestly erroneous.

¶39.    In summary, the chancellor was not manifestly wrong in awarding Andrea Carney all of the equity in the marital home under *Ferguson* given her substantial contribution to the acquisition of the home, her emotional attachment to the home, and the fact that the award eliminated the need for alimony. Because the chancellor's *Ferguson* analysis and findings

21

complied with the *Ferguson* principles and were within the chancellor's discretion, "we are duty bound to let [the] distribution stand." *Phillips*, 904 So. 2d at 1003. In affirming the chancellor's exercise of discretion in this case, we are mindful of the deferential standard of review this Court applies to a decision of chancery court, which possesses the "peculiar opportunity to sense the equities of the situation before it." *Tilley*, 610 So. 2d at 351.

## CONCLUSION

¶40.    On remand, the chancellor adequately justified her award of the equity in the Bell property to Andrea Carney and the chancellor's equitable division of the marital property was not manifestly wrong or clearly erroneous. Therefore, we affirm the judgment of the Chancery Court of Warren County.

¶41.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶42.    The majority and the chancellor justify this inequitable property distribution based on the theory that, had Andrea Carney not been awarded all of the equity in the marital home, she would have been awarded lump-sum alimony. Because Andrea Carney was not entitled to lump-sum alimony, I respectfully dissent.

¶43.    This Court has provided that lump-sum alimony can serve two purposes,[4] either to "aid the chancellor in equitably dividing the marital estate under the ***Ferguson*** factors,"[5] or "to aid the chancellor in correcting an equitable deficit, resulting from the equitable distribution of the marital estate under the ***Armstrong*** factors."[6] Here, neither purpose was served, so the chancellor should not have awarded Andrea lump-sum alimony.

¶44.    The chancellor did not use lump-sum alimony to aid in the equitable division of the marital property, and Andrea was not left with a deficit after the distribution of the marital estate. Howard Carney, on the other hand, was left with an extreme deficit, so if anyone was entitled to lump-sum alimony it would have been him. Furthermore, the chancellor found that Andrea's monthly income, with child support, amounted to $4,065.04, while Howard's monthly income amounted to $2,936.60. She also found the both Howard and Andrea have expenses that exceed their monthly incomes.

¶45.    In ***Cheatham v. Cheatham***,[7] this Court stated that when awarding lump-sum alimony, "the single most important factor undoubtedly is the disparity of the separate estates."[8] In her ***Ferguson*** analysis, the chancellor found that Andrea had a separate estate consisting of a Smith Barney retirement account with a value of $19,759 and nonmarital furniture with a value of $1,480. She made no findings as to Howard's separate estate, but he was awarded

---

[4] ***Davenport v. Davenport***, 156 So. 3d 231, 240 (Miss. 2014).

[5] ***Id***.; *see* **Haney v. Haney**, 907 So. 2d 948 (Miss. 2005).

[6] ***Id***.; *see* ***Rogillio v. Rogillio***, 57 So. 3d 1246, 1249 (Miss. 2011).

[7] ***Cheatham v. Cheatham***, 537 So. 2d 435, 438 (Miss. 1998).

[8] ***Id***.

23

his 401k worth $7,279.50 and social security benefits with an unknown value. Based on these findings, Andrea had a significantly larger separate estate, which would weigh against her receiving lump-sum alimony.

¶46. Because under this Court's precedent I believe that Andrea Carney was not entitled to lump-sum alimony, I respectfully dissent.

**LAMAR, J., JOINS THIS OPINION**.