FAIR, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 47. Jennifer and Robert Baumbach were married for eleven years. During that time, they had two children, and Jennifer quit her job as a flight attendant to stay home with them. She could not return to that line of work after the divorce, and she had poor employment prospects otherwise; while her husband earned more than $200,000 per year as an airline pilot and military retiree. The chancellor did give Jennifer a lopsided share of the meager marital estate and generous temporary support, but these awards clearly were calculated to eliminate the need for periodic alimony.
 

 ¶ 48. The majority reverses the chancellor's judgment on several sub-issues for further findings of fact. The reason for requiring findings of fact and conclusions of law as to the various factor tests is to allow the reviewing court to know why the chancellor did what she did and to ensure that the chancellor considered all the relevant facts and employed the correct legal standard in reaching her decision.
 
 [16]
 
 In my opinion, those requirements are met if the chancellor's twenty-four-page judgment is read as a whole. I would affirm the judgment in full, and so I respectfully dissent.
 

 1. Equitable Distribution
 

 ¶ 49. The majority concludes that the chancellor's division of the marital property and debts was not equitable. But "[i]t is well settled that an equitable division of property does not necessarily mean an equal division of property."
 
 Carney v. Carney
 
 ,
 
 201 So.3d 432
 
 , 440 (¶ 27) (Miss. 2016) (quoting
 
 Chamblee v. Chamblee
 
 ,
 
 637 So.2d 850
 
 , 863-64 (Miss. 1994) ). Given that Jennifer was not awarded periodic alimony, I see no abuse of discretion in the assignment of marital debts or in the orders that Robert pay mortgage on the marital home and split the proceeds from its eventual sale with Jennifer. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede."
 
 Ferguson v. Ferguson
 
 ,
 
 639 So.2d 921
 
 , 929 (Miss. 1994) (citation omitted). "[T]he chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands."
 
 Id
 
 .
 

 ¶ 50. The chancellor explained that Jennifer had been a stay-at-home mother and would be unable to resume her prior occupation. She relied on Robert's implicit promise to support her not just during the time she is actually raising the children, but over the course of her life, given that their decision for her to stay home with the children resulted in a lifetime of reduced earnings. Accordingly, the chancellor awarded Jennifer rehabilitative alimony to allow her time to find a new job and more of the marital estate to allow Jennifer to maintain her standard of living despite the loss of her husband's income upon which she depended. The chancellor further held that "[t]he marital property needs to be divided to eliminate periodic [alimony] payments and to avoid friction between the parties."
 
 See
 

 id.
 

 at 928
 
 . Respectfully, I disagree with the majority's characterization of this statement as too "broad" and "non-specific," as the chancellor's intent was clear when considered alongside her discussion of the
 
 Armstrong
 
 factors
 
 [17]
 
 ; the chancellor discussed the assets, liabilities, earnings, and earning potential of the parties at some length. In my judgment, the chancellor's reason for the
 award is clear, rational, and supported by the evidence.
 

 ¶ 51. At the time of the divorce, Robert earned more than $200,000 per year while Jennifer had no income and poor prospects of future employment. The property division is indeed lopsided, but I would emphasize that despite the fact that Robert and Jennifer owned a substantial amount of property, the net value of the marital estate was almost zero. The most important marital "assets" were investment properties located in Florida that had a net negative value of approximately $350,000. The chancellor had to do something with these properties, and the testimony at trial suggested that Robert had taken a much more active role in their acquisition and management than Jennifer had. But these properties were not the albatross Robert suggests in his brief; they produced income that mostly paid for the debt service. Only Robert had the means to maintain the properties when the rental income fell short, as it sometimes did. And while the properties had negative net values at the time of the divorce, they would eventually be saleable after the debt is paid down (or if the properties appreciate in the future).
 

 ¶ 52. As to the particular issue of the division of the equity in the marital home after it is sold, the chancellor ordered that it would be split equally between the parties. Obviously, this benefitted Jennifer, as Robert would be paying the mortgage for up to eleven years before the sale occurs. The majority would find this to be reversible error, but it is apparent to me that the chancellor intended this result, as the marital estate was otherwise inadequate to eliminate the need for alimony. And given the immediate demands on Robert's income following the divorce, he also benefitted from the chancellor's decision to structure the award this way.
 

 ¶ 53. I would also note that Robert's obligations are temporary and mostly short-lived. The award of rehabilitative alimony was for just three years, and Robert's discretionary income would gradually increase as the marital debts are paid off, the children graduate from school, and the marital home is sold. I concede that his obligations are initially onerous, but they are front loaded by design and not beyond his ability to pay. Property division is entrusted to the sound discretion of the chancery court and should not be disturbed unless that discretion has been abused.
 
 Berryman v. Berryman
 
 ,
 
 907 So.2d 944
 
 , 947-48 (¶ 14) (Miss. 2005). I cannot call this decision an abuse of discretion given that the needs of Jennifer and the children are immediate and
 
 Ferguson
 
 instructs that, if possible, property division should be effected to eliminate the need for periodic alimony.
 
 See
 

 Ferguson
 
 , 639 So.2d at 928.
 

 2. Attorney's Fees
 

 ¶ 54. Chancellors are instructed to apply the
 
 McKee
 
 factors in granting or denying attorney's fees. Here, the chancellor stated that she had considered the
 
 McKee
 
 factors in reaching her decision, though she did not expressly list the factors or subdivide her analysis between them. But where there is substantial evidence in the record supporting the chancellor's award of attorneys' fees, the omission of specific
 
 McKee
 
 findings cannot be deemed reversible error.
 
 See
 

 Varner v. Varner
 
 ,
 
 666 So.2d 493
 
 , 498 (Miss. 1995). The
 
 McKee
 
 factors include:
 

 (1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney
 was precluded from undertaking other employment by accepting the case.
 

 Chesney v. Chesney
 
 ,
 
 849 So.2d 860
 
 , 862-63 (¶ 10) (Miss. 2002) (citing
 
 McKee v. McKee
 
 ,
 
 418 So.2d 764
 
 , 767 (Miss. 1982) ).
 

 ¶ 55. The attorney's fee award to Jennifer was $15,000, substantially less than she requested. Thus, on appeal, Robert does not take issue with the chancellor's decision on six of the seven factors; the only factor he challenges is the relative financial ability of the parties. The majority concedes that Jennifer is unable to pay her attorney's fees without liquidating assets, but it would remand for the chancellor to "discuss whether Robert would [likewise] be forced to liquidate his assets in order to pay Jennifer's attorney's fees."
 

 ¶ 56. The chancellor laid out both parties' incomes, earning potential, and assets at great length in her opinion and judgment and directly compared them more than once. I cannot agree that she failed to consider Robert's ability to pay $15,000 of Jennifer's attorney's fees, and I would affirm that aspect of the judgment as well.
 

 3. Child Support
 

 ¶ 57. Even though Robert's income exceeded $200,000 per year, the chancellor accepted Robert's rather conservative claim that his adjusted gross income was just $109,116 per year or $9,093 per month. The chancellor ordered Robert to pay monthly child support of $1,817 and an additional $780 per month for private-school tuition, as the children had attended private school by agreement of both parties during the marriage.
 

 ¶ 58. Taken together, these awards amount to 28.5% of Robert's adjusted gross income. The majority would find this reversible error because it is a deviation from the statutory guidelines for two children, which is 20% of the adjusted gross income.
 
 See
 

 Miss. Code Ann. § 43-19-101
 
 (Rev. 2015). But the statutory guidelines simply do not apply to this case because Robert's adjusted income exceeds $100,000. Rather, the question is whether application of the guidelines is reasonable.
 
 See
 

 Miss. Code Ann. § 43-19-101
 
 (4) (Rev. 2015). While the chancellor did not explicitly say that she found it unreasonable, she did find that Robert "has substantially more earning capacity" and "more opportunity to increase his savings and build up his retirement." Meanwhile, Jennifer "has been out of the workforce for 10 years so that she could stay home and take care of the children" and "is unable to return to her former job as a flight attendant and will need training to return to the workforce." During their marriage, the Baumbachs "lived an above average lifestyle" and "the children attend[ed] private school." As we recently said in
 
 Ali v. Ali
 
 ,
 
 232 So.3d 770
 
 , 777 (¶ 21) (Miss. Ct. App. 2017), "the 'reasonable needs' of the child ought to be viewed at least as broadly as the reasonable needs of a wife seeking alimony." (Citation omitted). "It is not an abuse of discretion for the chancellor to consider the standard of living to which the child is accustomed in deciding what amount of support is reasonable."
 

 Id.
 

 ¶ 59. Determinations of child support are intensely fact-sensitive, requiring "a knowledge special to the actual circumstances and to the individual child or children."
 
 Thurman v. Thurman
 
 ,
 
 559 So.2d 1014
 
 , 1018 (Miss. 1990). The chancellor's opinion reflects that she ordered Robert to pay more because the girls had been attending private school and were accustomed to an "above average lifestyle." Both Robert and Jennifer had jointly determined the education the girls were receiving was in their best interest, and the chancellor found it should be continued, a decision which did not constitute an abuse of discretion in light of Robert's income
 and the resolution of other financial aspects of this divorce. Thus, I would affirm the chancellor's award of private-school tuition.
 

 Conclusion
 

 ¶ 60. The chancery court's judgment in this case is somewhat unusual because the facts are somewhat unusual-Robert has a very high income, but the marital estate was encumbered by much debt and had very little net value. It may have been more straightforward for the chancellor to have just ordered periodic alimony, but she followed the supreme court's dictates in
 
 Ferguson
 
 and crafted a property settlement that, though lopsided, eliminated the need for alimony.
 
 See
 

 Ferguson
 
 , 639 So.2d at 928. The award was not inequitable and was reached after applying the proper legal standard and making the required findings of fact. I would affirm the judgment in its entirety.
 

 CARLTON AND WESTBROOKS, JJ., JOIN THIS OPINION. WILSON, J., JOINS THIS OPINION IN PART.
 

 See
 

 Sandlin v. Sandlin
 
 ,
 
 699 So.2d 1198
 
 , 1203-04 (Miss. 1997).
 

 Armstrong v. Armstrong
 
 ,
 
 618 So.2d 1278
 
 , 1280 (Miss. 1993).