# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00476-COA

**RAYMOND EARL REYNOLDS**                                        APPELLANT

**v.**

**ELIZABETH KAY HENRY REYNOLDS**                              APPELLEE

DATE OF JUDGMENT                01/29/2018
TRIAL JUDGE:                             HON. GERALD MARION MARTIN
COURT FROM WHICH APPEALED:   LAWRENCE COUNTY CHANCERY
                                                  COURT
ATTORNEY FOR APPELLANT:        MATTHEW ALLEN BALDRIDGE
ATTORNEYS FOR APPELLEE:         JOSEPH A. FERNALD JR.
                                                  JAMIE NICOLE HARDISON-EDWARDS
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                          AFFIRMED - 12/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., TINDELL, McDONALD AND McCARTY, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     On January 29, 2018, the Lawrence County Chancery Court granted an irreconcilable-differences divorce to Raymond Reynolds and Elizabeth "Kay" Reynolds.  In his findings of fact, conclusions of law, and final judgment of divorce, the chancellor made the following determinations: (1) Raymond was required to pay any outstanding debt on the couple's 2012 Ford Focus; (2) Kay was awarded $4,200, or half, of the marital equity in the couple's former marital home; and (3) Kay was awarded lump-sum alimony in the amount of $19,500. Raymond now appeals, arguing that the chancellor's foregoing determinations were erroneous.  Finding no error, we affirm the chancellor's findings of fact, conclusions of law,

and final judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. Raymond and Kay were married on November 16, 2000, until their separation on or about May 24, 2013. On September 17, 2013, Kay filed her complaint for divorce and motion for temporary relief, and Raymond filed his answer and counterclaim for divorce on October 3, 2013. Both parties requested a fault-based divorce or, alternatively, an irreconcilable-differences divorce.

¶3. Raymond and Kay had two children during their marriage, one of whom died prior to the divorce proceedings. On May 20, 2014, the chancellor entered an order for temporary relief that granted temporary joint custody of the couple's surviving child, granted Raymond temporary use and possession of the marital home, and enjoined both parties from liquidating or transferring any assets during this time.

¶4. On January 4, 2015, upon a joint motion by the parties, the chancellor entered an order withdrawing the parties' fault-based divorce pleadings and allowing Raymond and Kay to proceed with an irreconcilable-differences divorce. That same day, Raymond and Kay filed a consent to divorce, wherein they agreed to allow the chancellor to decide the following issues: (1) child custody, (2) visitation, (3) child support, (4) equitable distribution of marital assets, (5) obligation to pay the remaining debt of the couple's 2012 Ford Focus, and (6) assessment of attorney's fees, if any.

¶5. Divorce proceedings took place over nine days in 2015 and 2016. On the final day of trial, Raymond and Kay came to an agreement as to custody and visitation of their

surviving child, leaving all remaining issues for the chancellor's determination. On January 29, 2018, the chancellor entered his findings of fact, conclusions of law, and final judgment of divorce. In the final judgment, the chancellor granted Raymond and Kay an irreconcilable-differences divorce and made the following determinations pertinent to this appeal: (1) Kay was awarded use, ownership, and possession of the couple's 2012 Ford Focus; (2) Raymond was obligated to pay all outstanding debt on the 2012 Ford Focus; (3) Kay was awarded $19,500 in lump-sum alimony; and (4) Kay was awarded $4,200 as her equitable distribution of the couple's marital property. Aggrieved by the chancellor's determinations and final judgment, Raymond now appeals.

## STANDARD OF REVIEW

¶6.    We apply a limited standard of review when examining a chancellor's decision in domestic-relations matters. *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶5) (Miss. Ct. App. 2017). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic[-]relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Henderson v. Henderson*, 757 So. 2d 285, 289 (¶19) (Miss. 2000). We review "the facts of a divorce decree in a light most favorable to the appellee," and unless the chancellor's judgment was manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard, the judgment should stand. *Fisher v. Fisher*, 771 So. 2d 364, 367 (¶8) (Miss. 2000).

¶7.    Specifically, we review a chancellor's judgment of property division "to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." *Wells v.*

*Wells*, 800 So. 2d 1239, 1243 (¶8) (Miss. Ct. App. 2001). "Alimony awards are [also] within the sound discretion of the chancellor." *Speed v. Speed*, 757 So. 2d 221, 224 (¶6) (Miss. 2000) (citing *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992)).

## ANALYSIS

¶8.    On appeal, Raymond takes issue with the chancellor's distribution of the couple's marital assets and marital debt and his decision to award alimony. "Mississippi law requires equitable distribution of the marital estate during divorce proceedings." *Griner v. Griner*, 235 So. 3d 177, 184 (¶9) (Miss. Ct. App. 2017) (citing *Owen v. Owen*, 798 So. 2d 394, 399 (¶14) (Miss. 2001)). "When the parties request that the chancellor resolve the issue of property division, the chancellor must do three things: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably." *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. Ct. App. 2015) (citations and internal quotation marks omitted). Before dividing the marital property, the chancellor must employ the factors set forth in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), keeping in mind the amount of nonmarital property belonging to the parties. *See Burnham*, 185 So. 3d at 361 (¶¶12-13).

¶9.    The *Ferguson* factors are:

(1)    contribution to the accumulation of property;

(2)    dissipation of assets;

(3)    the market or emotional value of the assets subject to distribution;

(4)     the value of assets not subject to distribution;

4

(5) the tax and economic consequences of the distribution;

(6) the extent to which property division may eliminate the need for alimony;

(7) the financial security needs of the parties; and

(8) any other factor that in equity should be considered.

*Ferguson*, 639 So. 2d at 928. "[E]quitable distribution of property does not necessarily mean an equal division of property." *Carter v. Carter*, 98 So. 3d. 1109, 1113 (¶11) (Miss. Ct. App. 2012). Rather, "fairness is the prevailing guideline in marital division." *Ferguson*, 639 So. 2d at 929. In reviewing a chancellor's judgment this Court only analyzes the chancellor's findings in applying the *Ferguson* factors; "we do not conduct the *Ferguson* analysis anew." *Carter*, 98 So. 3d at 1112 (¶9). As long as the chancellor properly applies *Ferguson*, we must allow the distribution to stand. *Id*. at 1113 (¶12). Finally, "after equitable division, an equitable deficit exists, the chancellor then should consider alimony." *Carney v. Carney*, 201 So. 3d 432, 440 (¶28) (Miss. 2016).

¶10. In his forty-three-page findings of fact, conclusions of law, and final judgment, the chancellor provided a detailed analysis of each *Ferguson* factor before determining the distribution of the couple's marital assets. The chancellor determined that both Raymond and Kay had significantly contributed to the accumulation of the marital property. During the marriage, Raymond primarily worked offshore while Kay primarily tended to the marital home and cared for the couple's two children. Kay later received education and training as a licensed practical nurse (LPN), allowing her to contribute economically to the marriage.

¶11. The chancellor determined that, at the time of the trial, Raymond and Kay both had

5

similar incomes and had incurred very limited amounts of debt during the marriage. The chancellor also found that no unreasonable dissipation or waste of assets occurred by either party.

¶12.    Regarding the valuation of the real and personal property, the chancellor noted that neither party provided the court with specific values of the couple's personal property other than the vehicles. The chancellor also acknowledged that Raymond purchased the marital home and surrounding property prior to the marriage and that the nonmarital equity totaled $40,200. The parties stipulated, however, that the property had marital equity of $8,400. Also, the chancellor determined that the emotional value of the real property and most of the vehicles was attributable to Raymond.

¶13.    With regard to tax and economic consequences, the chancellor found that neither party should be significantly impacted. However, the chancellor did acknowledge a need to divide retirement accounts equally to cure the foreseeable deficit to Kay's separate estate by not receiving any real property and receiving limited personal property. The chancellor finally determined that both Raymond and Kay possessed similar earning potential and ability to maintain their separate estates moving forward.

¶14.    The chancellor ultimately awarded Raymond $40,200 of nonmarital equity in the marital home. The chancellor equally divided the remaining marital equity in the home, awarding Raymond and Kay $4,200 each, or half, of the marital equity. While Raymond was awarded possession and exclusive use of the marital home, the chancellor determined that Kay's portion of the marital equity would be paid through lump-sum alimony. The

6

chancellor equally divided the total value of all retirement accounts, awarding both Raymond and Kay with $71,401.40 in retirement assets.

¶15.    Pursuant to the parties' agreement, the chancellor awarded Kay the couple's 2012 Ford Focus, valued at $16,000. Raymond was awarded the remaining seven vehicles, which possessed a total value of $26,350. Raymond was also awarded all personal assets identified to the chancellor, including furniture, appliances, televisions, and computers, which totaled $3,500. Any other unidentified personal assets were awarded to the spouse in possession of those items.

¶16.    The chancellor noted that, while Raymond and Kay had their own personal debts, the only debt submitted before the chancellor for distribution was the payment of the remaining $9,000 balance on the couple's 2012 Ford Focus. While the parties agreed to award the vehicle to Kay, the chancellor determined that Raymond had been primarily responsible for all payments on the vehicle. The chancellor assigned the remaining debt on the vehicle to Raymond and credited him $9,000 to pay off the vehicle.

¶17.    Finally, due to the limited number and nature of available marital assets and the $40,200 in separate property owned by Raymond, the chancellor determined that it was necessary to award lump-sum alimony to Kay. Accordingly, the chancellor awarded Kay $19,500 in lump-sum alimony, to be payable in $300 installments over sixty-five months.

¶18.    In total, Kay was left with $96,400 ($106,900 of marital equity minus $10,500 in personal debt). Raymond was left with $109,950 ($109,650 of marital equity minus $9,000 in marital debt minus $19,500 in lump-sum alimony minus $11,400 in personal debt plus

7

$40,200 in separate, nonmarital property). Raymond now appeals the chancellor's distribution and lump-sum alimony award, arguing that substantial evidence does not support the chancellor's decisions.

**I.    Whether the chancellor erroneously failed to consider the $6,000 Kay removed from the couple's joint checking account in the equitable distribution.**

¶19.   Prior to distribution, the chancellor entered a temporary order on May 20, 2014, which enjoined the parties from liquidating, transferring, or changing beneficiaries for any marital assets.  Raymond claims that Kay transferred approximately $6,000 from the couple's joint checking account after this order was entered.  Raymond now argues that the chancellor abused his discretion by failing to consider this transfer in his *Ferguson* analysis before distributing the couple's marital assets.

¶20.   The second *Ferguson* factor requires the chancellor to consider any dissipation of the marital assets, or "the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise."  *Ferguson*, 639 So. 2d at 928.  While Mississippi has no specific test for discerning the dissipation of marital assets, "we find it reasonable when considering if marital assets have been dissipated to look to whether the assets in question were actually wasted or misused."  *Smith v. Smith*, 90 So. 3d 1259, 1268 (¶37) (Miss. Ct. App. 2011).

¶21.   In his final judgment, the chancellor stated that he did not find any unreasonable dissipation of marital assets by either party prior to the injunction of the temporary order or prior to trial.  Raymond disagrees with this finding, arguing that he provided the chancellor

with undisputed testimony that Kay took approximately $6,000 from the parties' joint checking account in violation of the temporary order and that the chancellor failed to include this in his *Ferguson* analysis. However, Kay disputed Raymond's testimony herself by testifying that Raymond actually withdrew $7,000 from the joint checking account, and she did not. She further testified that when she withdrew from the account, there was only approximately $1,000 left in the account.

¶22. Also, as Kay asserts in her brief, no evidence exists in the record establishing if or exactly when any transfers from the joint checking account would have occurred. Raymond provided no documentation of the alleged transfer to the chancellor prior to or during the trial. The only evidence Raymond used to establish this claim is his own testimony and nothing more. As such, the chancellor had no substantial evidence of Kay's alleged transfer before him to incorporate into his *Ferguson* analysis. We therefore find Raymond's argument to be without merit and find that the chancellor was well within his discretion in determining that no dissipation of assets occurred.

II. **Whether the chancellor abused his discretion by equally dividing the equity in the marital home.**

¶23. Raymond also argues that the chancellor erroneously awarded $4,200, or half, of the marital equity in the couple's home to Kay. Raymond contends that Kay was not entitled to half of the marital equity in the home because she failed to prove that she contributed to the maintenance of the home.

¶24. The first *Ferguson* factor requires the chancellor to consider each spouse's significant contributions to the accumulation of the property, which includes any economic

9

contributions, marital and familial relationship contributions, and contributions which have any bearing on the earning power of a spouse. *Ferguson*, 639 So. 2d at 934. "A spouse who has made a material contribution toward the acquisition of property[,] which is titled in the name of the other[,] may claim an equitable interest in such jointly accumulated property incident to a divorce proceeding." *Id*. at 935. In divorce cases, there is a presumption that "the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." *Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994). Furthermore, our supreme court has acknowledged the nonmonetary contributions of a housewife and caregiver and has allowed this spouse to obtain an equitable interest in marital property so as to lessen the unfairness previously placed upon the traditional housewife. *Ferguson*, 639 So. 2d at 926.

¶25. As stated, the chancellor found that both Raymond and Kay made significant contributions to the accumulation of the marital property. While Raymond brought in the majority of the household income during the marriage, Kay was primarily responsible for the upkeep of the marital home and served as the primary caregiver for the couple's two children. During the course of the couple's seventeen-year marriage, Raymond's offshore job required him to be gone for more than half of each month of the year, leaving the marital home and children within the sole care of Kay during that time. Also, as soon as Kay received her education and training as an LPN, Kay began to contribute monetarily to the marital property while maintaining her job taking care of the marital home and children.

¶26. Contrary to Raymond's assertions, the record certainly reflects that Kay did

10

significantly contribute to the accumulation of the marital property. Further, Raymond was awarded the majority of the marital estate, including the marital home. As such, we find that substantial evidence supported the chancellor's decision to award half of the marital equity in the home to Kay, and, therefore, the chancellor acted within his discretion in doing so.

### III. Whether the chancellor erroneously determined that Raymond should pay the remaining debt on the 2012 Ford Focus.

¶27. In June 2012, a year before the couple's separation, Raymond purchased a 2012 Ford Focus. Kay primarily drove the vehicle while Raymond made all the payments and paid all applicable taxes and insurance on the vehicle. In their consent to divorce, the parties agreed that Kay would receive ownership and possession of Ford Focus but submitted to the chancellor the issue of who would pay the remaining debt on the vehicle.

¶28. Prior to trial and in compliance with Mississippi Uniform Chancery Court Rule 8.05,[1] Raymond and Kay both filed financial disclosure statements with the court. The vehicle was not listed as debt in Kay's financial statement but was listed in Raymond's statement with a $9,000 remaining balance. Also, both parties admitted at trial that Raymond was still making all payments on the vehicle up until that point. In his final judgment, the chancellor awarded the Ford Focus to Kay while awarding all remaining vehicles to Raymond. Because the outstanding debt on the vehicle was listed on Raymond's Rule 8.05 statement rather than

---

[1] Mississippi Uniform Rule of Chancery Court 8.05 requires parties in domestic-relations disputes involving economic issues and/or property division to submit to the chancellor: (1) "[a] detailed written statement of actual income and expenses and assets and liabilities"; (2) Federal and State Income Tax returns or W-2s from the previous year; and (3) a description of the party's employment history and earnings during the marriage. UCCR 8.05(a).

on Kay's statement, the chancellor determined that Raymond had been primarily responsible for the debt since the vehicle was purchased. The chancellor ordered Raymond to pay any outstanding debt on the vehicle and credited Raymond with $9,000 toward that payment, as listed on Raymond's Rule 8.05 statement. Raymond now argues that the chancellor abused his discretion by requiring Raymond to pay the outstanding debt on the vehicle.

¶29.	Equitable distribution also includes the division of marital debt. *Carter*, 98 So. 3d at 1114 (¶15). In this case, the parties stipulated that the Ford Focus was a marital asset with a value of $16,000. The parties also agreed that Kay would be awarded this asset. However, Raymond now argues that the chancellor failed to properly apply *Ferguson* and apportioned the vehicle's debt inequitably. Raymond claims that Kay continued driving the vehicle while he "almost completely footed the bill." Also, Raymond notes that Kay provided no evidence of her contribution to the vehicle, nor does she include the vehicle as a debt on her Rule 8.05 statement. As such, Raymond asserts that there is no evidentiary basis as to why the chancellor held him accountable for the remaining debt on the vehicle.

¶30.	Because the parties mutually agreed in their consent to divorce to award Kay with the Ford Focus, the chancellor's only task was to apportion the outstanding debt of the vehicle to the parties. Although Raymond continued to make the monthly payments, both parties admitted that Kay solely drove and maintained the vehicle throughout that time. Also, in assigning this debt to Raymond, the chancellor credited him with the $9,000 to pay off the outstanding debt, as documented in Raymond's Rule 8.05 statement.

¶31.	We are also mindful that, during distribution, the chancellor voiced a primary concern

about the limited number of assets available for distribution and the size of Raymond's separate estate compared to Kay's separate estate once all of the assets were distributed. The chancellor acknowledged that Kay received no real property, had no equity interest in a home, and received no tangible, marital assets other than the Ford Focus. On the contrary, Raymond received $109,650 in marital assets, including the marital home, seven vehicles, personal assets, and retirement assets, in addition to his own separate, nonmarital property worth $40,200. While Raymond and Kay walked away from the marriage with personal debt of $11,400 and $10,500, respectively, the only marital debt left for the chancellor's determination was the outstanding balance on the 2012 Ford Focus.

¶32. This Court has previously found nothing inequitable in a chancellor's assignment of marital debt to a spouse receiving a much larger portion of the marital estate. *See Carter*, 98 So. 3d at 1114 (¶¶15-18); *see also Seymour v. Seymour*, 960 So. 2d 513, 519 (¶¶13-15) (Miss. Ct. App. 2006) (affirming a chancellor's assignment of the remainder of the mortgage of the marital home to the husband, because the husband's separate estate and income were larger); *Humphries v. Humphries*, 904 So. 2d 192, 198-99 (¶24) (Miss. Ct. App. 2005) (affirming the chancellor's assignment of the marital debt to the husband in order to balance the husband's financial stability against the wife's financial stability). Raymond walked away from the marriage with a much larger separate estate and also continued to pay on the vehicle throughout the entire divorce proceedings. In applying our same logic to the current case, we find nothing inherently inequitable about the chancellor's decision to assign the $9,000 of outstanding marital debt to Raymond. We also find that substantial, credible

13

evidence supports the chancellor's decision and that the chancellor did not abuse his discretion.

**IV.    Whether the chancellor erroneously awarded $19,500 in lump-sum alimony to Kay.**

¶33.    Last, Raymond argues that the chancellor abused his discretion by awarding Kay $19,500 of lump-sum alimony.   Raymond further asserts that because the chancellor failed to consider any misconduct by Kay in his analysis, the chancellor's determination to award alimony was based upon an erroneous legal standard.

¶34.    An award of alimony is largely within the chancellor's discretion.  *Carney*, 201 So. 3d at 440 (¶28).  Regarding lump-sum alimony, this Court has said:

> Lump-sum alimony . . . is a fixed and irrevocable amount, used either as alimony or as a part of property division. It may be payable as a single, lump sum (as its name implies) or in fixed periodic installments. Lump-sum alimony has been described as a means of adjusting financial inequities that remain after property division. It is intended as an equalizer between the parties to serve equity amongst them completely once and for all. When lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors.  However, when a chancellor awards lump-sum . . . alimony after equitably dividing the estate, the chancellor should consider the *Armstrong* factors.

*Castle v. Castle*, 266 So. 3d 1042, 1051 (¶38) (Miss. Ct. App. 2018) (quoting *Stroh v. Stroh*, 221 So. 3d 399, 413 (¶45) (Miss. Ct. App. 2017)).

¶35.    In this case, the chancellor awarded lump-sum alimony in connection with the equitable distribution of the marital assets and therefore properly considered the *Ferguson* factors in his determination.  The chancellor determined that a very limited number and nature of the available assets existed for distribution between Raymond and Kay.  After

14

equitable distribution, Raymond received marital assets totaling $109,650, including retirement assets, the marital home, $26,350 worth of automobiles, and $3,500 of equity in other personal property, while Kay received approximately $87,400, including retirement assets and $16,000 of equity in the couple's 2012 Ford Focus. The chancellor then awarded Kay with $19,500 in lump-sum alimony based in part on the deficit between the couple's separate estates that resulted from the distribution of the assets.

¶36.    Raymond argues that in applying *Ferguson*, the chancellor erroneously failed to consider Kay's misconduct when dividing the marital estate. Raymond claims that although the parties agreed to an irreconcilable-differences divorce, Kay's dissipation of assets and estrangement from the couple's child contributed to the end of the marriage. As discussed earlier, the chancellor provided a thorough *Ferguson* analysis in his equitable distribution of the couple's marital assets and determined that no unreasonable dissipation of marital assets occurred. We find no evidence in the record to the contrary and agree with the chancellor's findings regarding dissipation of the assets.

¶37.    Regarding the minor child, the chancellor found that, despite any contentiousness that existed between Raymond and Kay relating to their child, the couple ultimately came to an agreement regarding custody and visitation that was within the best interest of the child. Raymond is correct that fault may be considered in an award of alimony. *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶11) (Miss. 2003). However, the purpose of alimony is not to punish but to assist a spouse in his or her transition to life outside of the marriage. *Mamiaro v. Mamiaro*, 179 So. 3d 51, 54 (¶13) (Miss. Ct. App. 2015). Again, we note that the chancellor

15

considered every applicable *Ferguson* factor and awarded Raymond a large portion of the marital estate. The supreme court has held that the single most important factor when the chancellor considers an award of lump-sum alimony is the disparity of the separate estates. *Castle*, 266 So. 3d at 1052. Because such disparity existed between Raymond's and Kay's estates after equitable distribution, we find that substantial evidence supports the chancellor's decision to award lump-sum alimony to Kay. We therefore find no abuse of discretion here.

## CONCLUSION

¶38. Upon review, we find that substantial evidence supports the chancellor's distribution of the couple's marital property and award of lump-sum alimony to Kay. We therefore find no abuse of discretion and affirm the chancellor's final judgment.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

16